## No. 12,254.

PUBLIC UTILITIES COMMISSION ET AL. *v.* CITY OF LOVELAND.
(289 Pac. 1090)

Decided June 23, 1930.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. RALPH L. CARR, Assistant, Mr. ROBERT E. WINBOURN, Attorney General, Mr. COLIN A. SMITH, Assistant, Messrs. LEE, SHAW & McCREERY, for plaintiffs in error.

Mr. HATFIELD CHILSON, Mr. REID WILLIAMS, Messrs. PERSHING, NYE, TALLMADGE & BOSWORTH, for defendant in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

ALTHOUGH this writ of error is entitled the Public Utilities Commission of the state of Colorado, and Otto Bock, Dan S. Jones and Worth Allen, commissioners constituting said commission, as plaintiffs in error, against the city of Loveland, Colorado, a municipal corporation, as defendant in error, the real controversy is between the city, a municipal corporation, and the Public Service Company, a private corporation—both public utilities, however, under our pertinent statutes—each of which claims the exclusive franchise and right to furnish and serve a certain territory adjacent to, and outside of, but near to, the outer boundary line of the city, with electricity for light and power purposes. The pending litigation had its inception in a petition filed by the Public Service Company with the Public Utilities Commission complaining that the defendant city was in course of constructing an electric line extending north from its city boundaries to serve certain farmers residing along such extension, which territory thus sought to be served by the city was already occupied by the Public Service Company which was maintaining a through system line extending north from the city of Loveland to the city of Fort Collins, and also a distribution line carried on the poles supporting the main transmission line which served a certain brickyard located some six miles north of the city, and also three other customers. The brickyard line was built about the year 1920 and was dedicated to serving this territory in dispute between the parties. The Public Service Company in its petition alleged that it is willing, ready and able to serve all prospective customers in the territory thus sought to be invaded by the city.

This proceeding was initiated under the provisions of the so-called anti-duplication law (S. L. 1917, p. 418; §2946, C. L. 1921). This section provides that: "No public utility shall henceforth begin the construction of a new facility, plant or system, or of any extension of its facility, plant or system without first having obtained from the commission a certificate that the present or

future public convenience and necessity require or will require such construction; Provided, That this section shall not be construed to require any corporation to secure such certificate for an extension within any city and county or city or town within which it shall have theretofore lawfully commenced operations, or for an extension into territory, either within or without a city and county or city or town, contiguous to its facility, or line, plant or system, and not theretofore served by a public utility of like character, or for an extension within or to territory already served by it, necessary in the ordinary course of its business.'' The section further provides: ''That if any such public utility, in constructing or extending its line, plant or system, shall interfere or be about to interfere with the operation of the line, plant or system of any other public utility already constructed, the commission, on complaint of the public utility claiming to be injuriously affected, may, after hearing, make such order prohibiting such construction or extensions or prescribing such terms and conditions for the location of the lines, plants or systems affected as to it may seem just and reasonable.'' The city says that no such certificate was necessary because the territory in dispute is contiguous to its own system, and is not already served by any other utility. The Public Service Company, asserting that the territory in question is also in the same sense contiguous to its pre-existing system and is served by the same, initiated this proceeding which led to the assumption by the Public Utilities Commission of authority to hear and determine the controversy.

Notice was given to the city of the petition, and the city responded thereto and filed its answer with the commission in which, in effect, it alleges that the territory in question was and is contiguous to its own facility and had not theretofore been served by a public utility of like character and, therefore, under the Public Utilities Act, the city was entitled to construct its extension line and serve the territory in dispute without obtaining from the

commission a certificate of convenience and necessity. Upon final hearing upon the evidence of both the city and the Public Service Company the commission sustained the petition of the latter and made findings of fact upon which it based an order directing the city to cease and desist from serving customers over its extension line within the disputed territory. Whereupon the city filed in the district court of Larimer county its petition for a writ of certiorari seeking thereby a review of the orders of the commission. The writ of certiorari was issued and on final hearing upon the certified record of the commission, the district court sustained the contention of the city and entered its decree vacating the orders of the Public Utilities Commission and dismissing the petition of the Public Service Company.

The Utilities Commission is here with its writ of error for a review of the decision of the district court. Both parties seem to concede that there is no dispute about the facts. Indeed, counsel for both parties have so declared. Apparently the district court in its review of the orders of the commission deemed the same to be not only contrary to law, upon the facts in the case, but also beyond, or in excess of, its jurisdiction. This, we think, is apparent from the record which we proceed to summarize.

In the court's statement of the case, immediately preceding its final order or decree, the learned judge said in substance that since the city's extension of facilities was made by it in territory contiguous to its own pre-existing facilities, lines and systems, and not theretofore served by a public utility of like character, it was not necessary that the city ask or obtain a certificate of public convenience and necessity. Such being the case, the district court said the commission should have so found, ''and it thereupon did not have, and does not have, jurisdiction to require a certificate, or upon that ground, to prevent the construction or to require the city to desist or cease serving customers on the extension.'' The trial court further observed that the commission improperly treated

the matter before it for decision as though the city had petitioned the commission for a certificate of convenience and necessity, and made findings and orders respecting such convenience and necessity. Nevertheless, the court seems not to have definitely so decided, though it did say it would seem to be beyond the scope of the commission's jurisdiction invoked in the case, and concluded by saying that if the commission's jurisdiction was exceeded, on account of the territory involved having been unserved, it could not lawfully make the orders preventing the extension, though this and other lines and service of the city may be and remain in the jurisdiction of the commission for proper regulation and orders.

The decision of the district court, we observe, is not based upon evidence which was brought out on the review, but entirely upon the record certified to it by the commission, which includes the evidence that was introduced before the commission and upon which it made findings of fact and entered the orders complained of. There is discussion here as to the nature and scope of the "writ of review" which our General Assembly in section 2961, C. L. 1921, has provided. This section says that the applicant for the writ may, within a certain time, apply to the Supreme Court of the state for a "writ of review" for the purpose of having the lawfulness of the original order or decision on rehearing of the commission inquired into and determined. This section further provides that no new or additional evidence may be introduced in the Supreme Court, but the cause shall be heard on the record of the commission as certified by it. "The review shall not extend further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the Constitution of the United States or of the state of Colorado, and whether the order of the commission is just and reasonable and whether its conclusions are in accord with the evidence. The findings and

conclusions of the commission on disputed questions of fact shall be final and shall not be subject to review. * * * Upon hearing, the Supreme Court shall enter judgment either affirming, setting aside or modifying the order or decision of the commission." The statute also provides that the provisions of the Code of Civil Procedure of the state relating to "writs of review" shall, so far as applicable, apply to proceedings in the Supreme Court under the provisions of this section. The writ of certiorari is denominated the writ of review by section 331, C. L. 1921, page 163.

In *Clark v. Utilities Commission,* 78 Colo. 48, 239 Pac. 20, we held that: "The attempt, by this writ [of review], to force the Supreme Court to take original jurisdiction in suits involving the validity of decisions and orders of the commission is null and void." And we further said that: "Whatever the nature of this so-called 'writ of review,' it partakes of the character of certiorari and we assume that it is one of those writs, with respect to the issuance of which, original jurisdiction is conferred upon this court by the Constitution." We declined, however, in the Clark case to take jurisdiction to review a decision of the district court under this Public Utilities Act. And we also said that we would decline to take jurisdiction because such issues could be fully determined and the rights of all parties preserved and enforced in the district court.

In *Greeley T. Co. v. People,* 79 Colo. 307, 245 Pac. 720, we held that the writ of review, if desired by a disappointed party in a proceeding before the Utilities Commission, must be sued out in the district court, if at all.

██ It necessarily follows from these decisions that the Supreme Court will not, in the first instance, review such decisions or orders as were made by the commission in this case. And it also follows that decision on the "writ of review" of orders of the commission may be had in the district court, though no express statement to that effect is contained in the Utilities Act.

■ In the light of the foregoing, let us test the judgment and decree of the court in this case. As already stated, we said in the Clark case that it partakes of the nature of certiorari. Apparently the city so considered it in its application to the district court for a review of the orders of the commission in this case. Upon its application the district court awarded a writ of certiorari thereby to review such orders. The district court evidently considered the writ in form and substance our Code writ of certiorari and intended to, and as matter of fact did, consider that it was proceeding thereunder. Let us, therefore, assume for our present purpose, that this writ of certiorari is the appropriate remedy under which to review such orders of the Utilities Commission as are now before us. We may properly do so not only because the city itself may not complain, but our decision in the Clark case indicates, if it does not decide, that the writ is applicable for such a purpose. We observe, in the first place, that by repeated decisions we have held that in a proceeding by such a writ the court is limited in its review of orders or judgments of inferior tribunals to questions of jurisdiction only, and, as some of the decisions say, to manifest abuse of discretion. *Leppel v. District Court,* 33 Colo. 24, 78 Pac. 682; *Bulger v. People,* 61 Colo. 187, 195, 156 Pac. 800; *People v. District Court,* 72 Colo. 525, 211 Pac. 626.

If the settled rule of this court is enforced in its strictness and fullness, this review must fall because the Utilities Act unmistakably and clearly invests the Public Utilities Commission with the sole jurisdiction to hear and determine, in the first instance, a controversy of this nature, and the district court had jurisdiction of the parties, both of them appearing and submitting without question the settlement of the controversy then before the court. But it is not necessary to an approval of the orders of the commission in this case, and to a reversal of the judgment and decree of the district court which nullified the same, merely to say that in certiorari only jurisdictional

questions may be considered in a determination by the district court of the propriety of the orders of the commission; for it is clear from the record of the commission, on which alone the district court set aside its orders and dismissed the petition of the Public Service Company, that the district court's judgment was based upon an erroneous view of facts as well as law.

In *Atchison, T. & S. F. Co. v. Public Utilities,* 68 Colo. 92, 188 Pac. 747, we first had occasion to consider the meaning and effect of section 2961, C. L. 1921, under which that case, as well as the case now before us, was instituted. In the Santa Fe case, supra, certain shippers asked the Public Utilities Commission to reform switching rates of railway companies. The commission reduced the rates and the companies sought and obtained a court review under the foregoing section. Commenting upon this section, we there said: " 'The findings and conclusions of the commission on disputed questions of fact' are not 'subject to review,' but since the same section permits us, among other things, to determine 'whether the order of the commission is just and reasonable and whether its conclusions are in accordance with the evidence,' we conclude that the intent of the legislature was to empower us to set aside or modify the orders of the commission if they were based on propositions of fact in support of which there was no evidence, but not to review findings of fact upon which the evidence was conflicting."

The writer of the opinion doubtless meant by "no evidence," no substantial evidence. With that qualification, or that meaning, we deem the statement correct. In the case now before us the district court upon its review did not have before it the question of rates, but only the propriety of the orders of the commission, which in effect prohibited the city from further maintaining or operating its facilities for supplying customers in the disputed territory outside the city limits with electricity for power and lighting purposes. The district court upon its review, which was solely on the record of the commis-

sion which, as we have stated, includes the evidence that was heard by that body, and upon which it entered its orders, ignored and set aside the commission's findings of facts and upon its own erroneous view of the law and its own power, made its own findings of fact and held that the commission erred in its findings of fact and in its orders and judgment against the city rendered thereon. It is not necessary to state or summarize the findings of fact by the commission. We have read this record, particularly the long written statement of the district court, including its findings upon the facts and its theory of the law, with a view particularly to ascertain if there is sufficient legal credible and substantial evidence to sustain the findings of fact made by the commission. We are satisfied that the commission was clearly authorized and justified in its findings of fact, and also in entering its orders. Without questioning the ability and sincerity of the trial court, we are satisfied that it took an entirely erroneous view of its authority and duty in the premises. To approve of the court's findings and decree would be upon our part a virtual repeal of the essential provisions of the Public Utilities Statute. It should be borne in mind in considering cases under this statute that it was clearly the intention of our General Assembly to give to the Utilities Commission complete control over public utilities so far as that could be done under existing constitutional limitations. In the case of *Interstate Commerce Commission v. U. P. R. R. Co.*, 222 U. S. 541, 32 Sup. Ct. 108, 56 L. Ed. 308, it was said, as expressed in the syllabus: "This court, in determining the validity of an order of the Interstate Commerce Commission, confines itself to the ultimate question as to whether the Commission acted within its power. It will not consider expediency, nor will it consider facts further than to determine whether there was sufficient evidence to support the order." And the court also said: "Orders of the Interstate Commerce Commission are final unless beyond the power that the Commission can

constitutionally exercise; beyond its statutory power, or based upon a mistake of law." This doctrine is just as applicable to orders of our Public Utilities Commission made under the authority of our utilities statute. The record clearly shows, at least the Utilities Commission so found, and properly so we think, and the trial court so determined, that the field or territory which the city attempted to monopolize outside of its own municipal boundaries was just as contiguous to the pre-existing facilities of the Public Service Company as to those of the city. The Service Company was first in the field. The very object of the provisions of the statute applicable here was to prevent, in the interests of the general public, unnecessary duplication of facilities or systems for furnishing the same to customers. When the city became a public utility under the statute, it had no superior right as to territory outside of its municipal boundaries over the rights of any other public utility, private corporation or otherwise, authorized to furnish service.

To sum up, we cannot say that the commission was not justified in its findings of fact, and its orders and judgment based thereon. We are not to be understood as saying that the Public Utilities Commission has unlimited and unrestricted power in making findings of fact and in entering orders and decrees. It is sufficient to say in this case that no constitutional or statutory provisions have been violated by the commission and that the evidence before it fully justified the orders which it made, and that the district court either in a code writ of certiorari or by the writ of review provided by the Utilities Act, if there is any difference between them, was not justified in its judgment setting aside the orders of the Utilities Commission. The judgment is therefore reversed, and the cause remanded with directions to the district court to vacate its judgment or decree and, in lieu thereof to enter an order dismissing the writ of certiorari at the costs of the city.