## No. 13,641.

## Glenwood Light and Water Company et al. *v.* City of Glenwood Springs.

(55 P. [2d] 1339)

Decided March 2, 1936. Rehearing denied March 30, 1936.

Messrs. MOYNIHAN, HUGHES & KNOUS, Messrs. DARROW & DARROW, Mr. PAUL P. PROSSER, Attorney General, Mr. RICHARD E. CONOUR, Assistant, for plaintiffs in error.

Mr. FRANK DELANEY, for defendant in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THE Public Service Company, a public utility, owns a hydroelectric generating plant known as the Shoshone plant located on the Colorado river approximately seven miles above Glenwood Springs. The Glenwood Light and Water Company, herein referred to as the Glenwood company, is a public utility owning a hydroelectric plant at Glenwood Springs operated by water used by the city. It supplies through its distribution system electric current to the citizens of Glenwood Springs and vicinity. The city of Glenwood Springs is a municipal corporation organized under the laws of the state of Colorado. The current which the Glenwood company produces from the use of the city water is not sufficient to supply the peak demand of its customers and it purchases standby energy from the Public Service Company.

Prior to 1926 the Glenwood company owned the transmission line constructed to carry a 13,000 volt current extending from the city gate of Glenwood Springs to the Shoshone plant, and purchased such standby energy

delivered at the generating plant and assumed the line loss in transit. In that year the line was rebuilt by the Public Service Company, pursuant to a contract with the Glenwood company, to carry 44,000 volts. Under this contract the Public Service Company was to have absolute ownership of the first mile of line leading from the plant and the next 5.28 miles of line as rebuilt and improved was to remain the property of the Glenwood company. As a part of the contract for rebuilding the line and selling the first mile to the Public Service Company the latter was given a twenty year lease, which expires in 1946, on the 5.28 miles of line, by the terms of which it was to pay the taxes, patrol and maintain it; pay $20 a year to the Glenwood company; and deliver current over the line at the city gate of Glenwood Springs for an agreed price. The Public Service Company was to have the use of the 5.28 miles of line as a segment of its transmission line supplying Cardiff, Carbondale, Rifle, New Castle, Grand Valley and DeBeque, all of which towns lie beyond Glenwood Springs. In the four towns last named, the Public Service Company serves the retail consumers directly.

Early in the year 1933, complaint being made to the Public Utilities Commission that the rates charged by the Glenwood company for its product were excessive, appropriate proceedings were instituted before the commission and hearings conducted for the purpose of determining whether or not there was any basis for the complaint. In the course of the proceedings evidence relative to the value of the company's properties was introduced, one of the questions being as to whether or not the value of the 5.28 miles of line, herein mentioned, should be included in the valuation in determining the rate base. The commission held that after allowing certain depreciation it should be included, and the question here involved likewise is whether the value of the 5.28 miles of line owned by the Glenwood company, as rebuilt by the Public Service Company and now under lease to it

until 1946, found by the commission to be $9,555, shall be included in the rate base of the Glenwood company. The district court on a review of the commission's findings held that the evidence was not conflicting and that such value was improperly included in the rate base of the Glenwood company and entered judgment accordingly.

The judgment of the district court was right. The issue involved is simple; the facts are clear.

▉ The test of whether the value of any given property shall be included in the rate base of a public utility is whether it is used and useful in supplying the commodity or service that the utility has undertaken to furnish. If it is used and useful it is properly included; if not, it must be excluded. From this it follows that property may be owned by a utility, but if it is not used by or useful to it in fulfilling its obligations to the public then such property cannot be included in the base for rate-making purposes. On the other hand a utility may lease property and if it is used by it and useful in carrying out its obligations to the public, the rental paid for such property is a proper overhead charge to be borne by the utility customers, and to be equitably allocated to them. Such an expense will properly appear in the rate charged by the lessee utility, but the value of the leased property cannot be reflected in the *rate base* of the lessee utility, neither can it be reflected in the rate base of the lessor when such lessor surrenders the entire use of it for a consideration.

▉ The Glenwood company recognizes the distinction between factors that enter directly into the determination of rates as taxes and operating expenses and those that enter indirectly as a valuation included in the rate base. In its brief it says: ''In fixing the actual rate as distinguished from the rate-base valuation, necessarily, the Commission takes into consideration the annual operating expenses of the Company. Therefore, the Glenwood Springs consumer obtains the benefit of the following items in the 1926 contract: (1) Payment of

taxes by the Public Service Company; (2) Maintenance of the Shoshone line by the Public Service Company; (3) Delivery of electrical energy at Glenwood as against Shoshone.'' Such benefit is obtained by the Glenwood Springs consumer because the Glenwood company *does not take the entire output* of the Public Service Company. The items of expense saved by the Glenwood company become operating expenses of the Public Service Company and are taken care of by a spread among all of the purchasers of current from the generating company. The Glenwood company being a purchaser of a part of the current pays only a proportional part of such items reflected in the rate at which it purchases its standby energy. As it would not be equitable to reflect in the rate to the Glenwood company the entire overhead of the Public Service Company necessitated by their operation of the line belonging to the Glenwood company; neither is it proper to include in the rate base of the Glenwood company the value of the property which it leased, as it contends by a valid and provident lease, and which is wholly used and controlled by the Public Service Company. The function of a lease is to transfer from the lessor to the lessee the *use* of the leased property for a consideration. When the right to use the line in question passed from the Glenwood company to the Public Service Company and the latter company began to use it for carrying current to its customers, not only to the Glenwood company, but to six other towns beyond, the line in a legal sense ceased to be property of the Glenwood company used and useful in its operations. Assuming, as the Glenwood company contends we should assume, and as the commission finds we must assume, that the contract is valid and not improvident, we have a situation in which a public utility has transferred title to one mile of its line and has leased the remaining portion for a consideration of $20 a year, plus a reconstruction of the line at the lessee's expense, which, no doubt, will result in the lessor's having property of increased

value on the expiration of the lease. This is unquestionably a legal consideration sufficient in law to support a contract. The Public Service Company—one of the contracting parties—not being a party to this litigation the commission, as it points out, cannot consider the providence or improvidence of the contract and without determining that question, it assumed and we assume it to be a provident contract. If it was in fact a provident contract the Glenwood company has what is, or at least what it considered is, a satisfactory return on its investment in the $20 a year rental and the enhanced value of its property. If so there is no reason for reflecting its value in the rate base in order that it may have a double return on such investment. If it was an improvident contract and the return to the Glenwood company is not equal to the 6.5 per cent that the city concedes is a reasonable return, then it should not be permitted to shift the burden of such improvidence to the consumers of the city of Glenwood Springs by reflecting in the rate base the value of the entire property as improved, particularly when the added value is part of the consideration for the lease, a consideration which no doubt the Public Service Company will amortize over the twenty year period and provide for its payment in the rates it charges to its consumers, the Glenwood company included. To allow such added value so to be reflected would be to allow consideration for a lease paid in advance to be reflected in the rate base as property used and useful in carrying out the obligations of the utility. If the contract is improvident it cannot be remedied in a proceeding the parties to which include only one of the contracting parties.

The Glenwood company complains that a part of the consideration it secured for the use of its line under the contract is such as must be passed to the consumer in lower rates, and that it thus is prevented from securing any return on its line investment unless its value is included in the rate base. True, any line loss which the

Glenwood company saves by delivery of current at the city gate, any maintenance charges and taxes saved, are of no actual financial advantage to the company because if not saved they would be passed to the consumer by increased rates, but in addition to such savings as are reflected only in the rates to the consumer the Glenwood company secured the payment of $20 yearly and the complete rebuilding of 5.28 miles of its line. A conclusion by the Public Utilities Commission that this is not an adequate return to the Glenwood company would have been a determination that the contract is an improvident one with one of the contracting parties—the Public Service Company—not before it. In assuming the validity and the providence of the contract—a contract of lease that surrenders the whole control and use of the property to the lessee—the adequacy of the return for which provision is made in the contract likewise must be assumed.

Under the record as here presented the trial court was correct in its findings: That there was no conflict in the evidence as to the use of the line; that the evidence failed to show the line in question to be used by and useful to the Glenwood company; and that the Public Utilities Commission exceeded its jurisdiction under such evidence in permitting the value of the line in question to be included in the rate base. The record clearly shows that the line is used entirely by and is useful to the Public Service Company in delivering energy to the Glenwood company at the city gate and in transmitting energy to its other customers beyond. For the right so to use it the Public Service Company paid a legal consideration over and above any reduction in rate to the Glenwood company, the amount of which reduction, if such there was, under the record here would be purely speculative.

In determining that the Public Utilities Commission exceeded its jurisdiction under the evidence the district court was acting within its powers. *Greeley T. Co. v. People,* 79 Colo. 307, 245 Pac. 720. Section 2961, C. L. 1921, so far as here material provides: ''The review

shall not extend further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the constitution of the United States or of the state of Colorado, and whether the order of the commission is just and reasonable and whether its conclusions are in accordance with the evidence. The findings and conclusions of the commission on disputed questions of fact shall be final and shall not be subject to review.''

In *Public Utilities Commission v. Town of Erie,* 92 Colo. 151, 18 P. (2d) 906, speaking with reference to the foregoing quoted portion of the statute we said: ''We follow the above statutes, and in conjunction therewith we advert to our repeated declaration that the scope of review on certiorari is limited to the inquiry as to whether jurisdiction has been exceeded, discretion abused or authority regularly pursued. *Public Utilities Commission v. City of Loveland,* 87 Colo. 556, 289 Pac. 1090; *State Board of Dental Examiners v. Savelle,* 90 Colo. 177, 8 P. (2d) 693, and numerous cases there cited.''

The Workmen's Compensation Act also provides that facts found by the Industrial Commission on conflicting evidence shall be binding on all courts of review. The provision is similar to that contained in the statute above quoted.

In *O. P. Skaggs Co. v. Nixon,* 97 Colo. 314, 50 P. (2d) 55, our holding was in effect that when the Industrial Commission makes a fact finding which is contrary to the uncontradicted evidence it acts in excess of its powers; that in such circumstances the court, in reviewing the action of the commission, is passing upon a question of law and not making findings of fact, and consequently it is not usurping the fact-finding function of the commission. All that the district court did in this case was to determine as a matter of law that there was no conflict in the evidence as to the use of the property in question, and that the uncontradicted evidence disclosed that the

property was not used by, and useful to, the Glenwood Springs company. In so doing the court was passing upon questions of law and was not usurping the fact-finding function of the Public Utilities Commission.

The finding of the trial court that the commission exceeded its jurisdiction in including the value of the line in the rate base, and its judgment based on such finding and remanding the case to the Public Utilities Commission in order that it may readjust the rates on the lower valuation of the rate base, is correct.

Judgment affirmed.

MR. JUSTICE HOLLAND dissents.