## No. 18,214.

PUBLIC UTILITIES COMMISSION OF COLORADO, ET AL. *v.*
HAROLD E. WATSON JR., AS WATSON TRANSPORT COMPANY.
(330 P. [2d] 188)

Decided September 22, 1958.   Rehearing denied October 14, 1958.

Mr. E. G. KNOWLES, Mr. CLAYTON D. KNOWLES, for plaintiff in error Union Pacific Railroad Company.

Mr. T. A. WHITE, Mr. ERNEST PORTER, for plaintiff in error Rio Grande Motorway, Inc.

Mr. THOMAS B. MITCHELL, Mr. E. B. EVANS, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

WE will refer to the parties to this writ of error as follows: The Public Utilities Commission of the State of Colorado as the "Commission," and the defendant in error Harold J. Watson, Jr., as "Watson."

Watson conducts a transfer, moving and cartage business under authority of P.U.C. certificate No. 498. The original thereof was issued in July 1930 to one Mattison who in 1941 was granted authority to transfer this certificate to Lloyd Allen. In 1946 Allen obtained permission to transfer this certificate to William E. Clark, and Clark in July 1947 applied for and received authority to transfer the same to Watson.

The original certificate of public conveyance and necessity reads as follows:

"Application 1659, Decision No. 3076, September 29, 1930. Conduct of a transfer, moving and general cartage business in the City of Loveland and in the County of Larimer and for occasional service throughout the State of Colorado, and each of the counties thereof, subject to

the following conditions: (a) For the transportation of commodities other than household goods between points served singly or in combination by scheduled carriers, the applicant shall charge rates which in all cases shall be at least twenty (20%) percent in excess of those charged by scheduled carriers; (b) The applicant shall not operate on schedule between any points; (c) *The applicant shall not be permitted, without further authority from the Commission to establish a branch office or have any agent employed in any other town or city than Loveland, for the purpose of developing business.*" (Emphasis supplied.)

Complaint was filed with the Commission by another carrier contending Watson's operations were contrary to law and this complaint alleged inter alia:

"(1) That Watson's authority is restricted to service with Larimer County, Colorado, with occasional service outside that County, but that Watson in fact continuously and regularly hauled cement from La Porte in Larimer County to Denver, which is outside Larimer County.

"(2) That notwithstanding a restriction in the certificate of public convenience and necessity to the contrary, Watson has established an office in Denver for the purpose of developing business."

The Commission made the following findings: "The undisputed evidence is that during the first ten months of 1954 Watson hauled approximately forty million pounds of bulk cement from La Porte to Denver. Taking at face value Watson's statement that his trucks are ordinarily loaded to their maximum capacity of 40,000 pounds, that is 1,000 trips, or an average 100 trips per month. By March, 1955, the tempo had increased to about 250 trips per month, and by April, 1955, to approximately 300. Watson testified that he serves each of his nine customers with at least one trip every working day, as a rule. Watson also hauls cement from Portland, Colorado, to Rocky Ford, Colorado, neither point in Larimer County, several times each month for one cus-

tomer. Cement hauling produces 90% of Watson's total revenue, he states."

"Watson's customer is not the cement plant located at La Porte, in Larimer County, the base territory, but is instead the cement user located in metropolitan Denver; Watson has no cement customers in Larimer County, according to his testimony; he is not serving citizens in the primary area, * * * Here, the cement operation is not even based in or conducted from Larimer County; the Loveland office has nothing to do with the cement operation; the cement trucks are not based anywhere in Larimer County, but rather, they operate out of the Denver terminal. Here, no commodities are brought to, or transported for customers in the primary area; the cement is brought to Denver for Denver customers at the hire and request of Denver customers. * * * We think the evidence is clear that Watson pursued his intention to establish a major hauling operation irrespective of what his authority might be."

The evidence discloses that Watson's cement hauling operations are conducted six days a week with a minimum of 250 to 300 trips per month.

With reference to the establishment of a Denver office by Watson the Commission made the following finding: "Watson lives now, and at all times herein material has lived in Denver; he does his business in Denver, not in Loveland. The cement trucks are all based in Denver, none operate out of Loveland. The evidence is also undisputed that Watson's bulk cement business has developed to its present level from nothing since 1952; that it was developed on personal contact by Watson, and that Watson operates out of no other office than the Denver establishment."

Business cards and telephone listings were introduced before the Commission showing that he was in the trucking business with headquarters at 5201 York Street, Denver, Colorado. The Commission concluded that Watson was operating out of Denver.

The Commission ordered Watson to "cease and desist from all transportation of bulk cement from Boettcher, Colorado, or Portland, Colorado, to other points in the State of Colorado, except such transportation as may occasionally and infrequently arise as an incident of the operation of a transfer, moving and general cartage business by respondent in the City of Loveland and the County of Larimer. That the respondent cease and desist from all use of his office in Denver, Colorado, or any office at any other point than Loveland, Colorado, or any office at any other point than Loveland, Colorado." Watson was further ordered, to cease all forms of advertising indicating that he has any office for the transaction of business except at Loveland, Colorado, and he was directed to omit from any telephone listings in Denver reference to any such office.

After a petition for a rehearing was denied Watson filed in the Denver District Court a petition for a review of the findings and order of the Commission. The petition for review alleged that the findings and order of the Commission "are unlawful, arbitrary and unreasonable and capricious and in violation of the rights of this petitioner under the Constitution of the United States of America and the State of Colorado and are contrary to the evidence introduced before said respondent Commission; that the said findings and orders of the Commission constitute an excess of jurisdiction and an abuse of discretion on the part of said Commission against this petitioner." The Commission submitted its complete record in the case to the trial court together with an answer putting in issue the allegations of the petition. The plaintiffs in error Union Pacific Railroad Company and Rio Grande Motor Way, Inc., were permitted to intervene in the District Court action.

The trial court after hearing stated "it is the feeling of this Court that the Public Utilities Commission of the State of Colorado in their decision rendered on the date heretofore mentioned has denied Harold E. Watson the

use of his property without due process of law, and it is the judgment of this Court that their decision is the equivalent of a confiscatory action." Thereupon judgment was entered in favor of petitioner Watson "reversing the award of said Public Utilities Commission." The trial court further states that "the Commission not previously properly defining the meaning of the word 'occasional' as used in the previously issued certificates in the Petitioner's Certificate in particular, results in denying to Petitioner his property without due process of law and is confiscatory in nature, contrary to the Constitutions of the United States and the State of Colorado."

From the judgment reversing the order of the Commission, this writ of error is prosecuted.

Two questions are presented for determination. (1) Does the evidence before the Commission disclose that Watson's business operations are in excess of and beyond the authority granted in 1930 "for occasional service" throughout the State of Colorado? (2) Did Watson establish a branch office in any other town or city other than Loveland, for the purpose of developing business?

■ Both of these inquiries must be answered in the affirmative. The record is replete with testimony from Watson himself that his operations in hauling this vast quantity of bulk cement ranged all the way from Portland, Colorado, to Rocky Ford and Denver, as well as from La Porte in Larimer County to metropolitan Denver. The cement hauling business was conducted from a Denver headquarters, advertised by Watson as in Denver by insertions in the Denver Telephone Directory, cards and personal solicitation. Practically all of Watson's time was spent in connection with his Denver operation.

There is nothing obscure or mysterious about the word "occasional" as used in the certificate of authority issued in 1930 and under which Watson now claims the right to operate. Webster's Unabridged New International Dictionary defines "occasional" as "occurring at irregular

intervals; infrequent." Webster's Intercollegiate Dictionary defines the word as "occurring now and then; incidental." "* * * the term regular in its ordinary and popular meaning is the clear antonym of "casual" or "occasional" * * *." *Palle v. Industrial Commission,* 79 Utah 47, 7 P. (2d) 284. The record before us dispels all doubt that Watson's operations were *regular* and not *occasional.* (Emphasis supplied.)

It is also clear from the record that the Commission did not go outside thereof in making its decision. Nor was Watson deprived of any property or property right by the order of the Commission. The word "occasional" has never varied from its meaning in common usage. What the Commission did was to rule that Watson's operations in transporting this vast quantity of bulk cement day after day as a regular routine did not constitute "occasional service" outside of Larimer County. That Watson established a Denver office from which he conducted his operations appears beyond doubt from the evidence. His certificate of convenience and necessity limited him to an office in Loveland, Colorado. The Commission ruled that such unauthorized operations cease and in this it is amply supported by competent evidence in the record. We find nothing in the record here to bring the present controversy within the rule expressed in *Glenwood Co. v. Glenwood Springs,* 98 Colo. 340, 55 P. (2d) 1339.

C.R.S. '53, 115-6-15 provides: "* * * The review shall not extend further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the constitution of the United States or of the state of Colorado, and whether the order of the commission is just and reasonable and whether its conclusions are in accordance with the evidence."

Findings and conclusions of the Commission on disputed questions of fact, when based on competent

evidence, are final and not subject to review by the courts.

The judgment of the trial court is reversed and the cause remanded with direction to affirm the order of the Commission.

MR. JUSTICE MOORE not participating.