Mr. Chief Justice Moore
delivered the opinion of the Court.
Plaintiff in error will be referred to as Transit. In October 1963, Gil Perry who was President of Transit, and a representative of the Cherokee Water District had a conversation concerning the transportation of 6200 tons of steel pipe from the plant of a wrapping company in Denver to a job site east of Colorado Springs. A verbal agreement resulted under which Transit agreed to provide the transportation. Transit began hauling on October 29, 1963, and the last delivery was made on January 6, 1964. In all, 385 truckloads of steel water pipe were hauled from Denver and delivered at various points along the route of a twenty mile pipe line being installed by Cherokee Water District.
Transit was the owner of a Certificate of Public Convenience and Necessity issued by the Public Utilities Commission which provided in pertinent part that Transit was certificated to:
“Conduct of a transfer, moving and general cartage business in the City and County of Denver and the Counties of Adams, Arapahoe and Jefferson, in the State of Colorado, and for occasional service throughout the State of Colorado and in each of the counties thereof, subject to the terms and conditions hereinafter stated.”
After the hauling by Transit had been completed, proceedings were commenced before the Commission and a rule to show cause issued requiring Transit to show cause why the Public Utilities Commission should not take such action or enter such order or penalty as *56 might be appropriate, in view of the fact that hauling 385 loads of steel pipe to an area outside the certificated territory in which Transit was authorized to serve, could not be construed to be a rendition of “occasional service” within the meaning of that term as employed in the certificate which it owned.
Upon hearing, the Public Utilities Commission found that Transit violated that part of its certificate authorizing “occasional service throughout the State of Colorado and in each of the counties thereof,” when it transported a total of more than 6200 tons of pipe in 385 separate loads over a period of approximately 75 days, from Denver to Colorado Springs and various points along the pipe line route east of Colorado Springs. A cease and desist order was issued by the Commission. The action of the Commission was upheld in the district court.
As grounds for reversal it is argued that since the 385 truckloads of pipe were hauled by Transit for one customer, pursuant to one verbal contract covering 6200 tons of pipe needed to fill the requirements of one job, the transaction amounted to no more than the rendition of “occasional service throughout the State of Colorado” and was within the powers authorized by the certificate owned by Transit. We cannot agree with this argument.
In Public Utilities Commission v. Watson, 138 Colo. 108, 330 P.2d 138, this court had occasion to discuss the meaning of the term “occasional service” in the same context as it appears in the instant case. The court there stated, inter alia:
“There is nothing obscure or mysterious about the word ‘occasional’ as used in the certificate of authority issued in 1930 and under which Watson now claims the right to operate. Webster’s Unabridged New International Dictionary defines ‘occasional’ as ‘occurring at irregular intervals; infrequent.’ Webster’s Intercollegiate Dictionary defines the word as ‘occurring now and then; *57 incidental.’ ‘* * * the term regular in its ordinary and popular meaning is the clear antonym of “casual” or “occasional,” * * *.’ Palle v. Industrial Commission, 79 Utah 47, 7 P.2d 284. The record before us dispels all doubt that Watson’s operations were regular and not occasional. (Emphasis supplied.)” Further, this court said:
“* * * The word ‘occasional’ has never varied from its meaning in common usage. What the Commission did was to rule that Watson’s operations in transporting this vast quantity of bulk cement day after day as a regular routine did not constitute ‘occasional service’ outside of Larimer County. * * *”
The above-quoted language is applicable to the instant action. The details of Transit’s transportation service to Cherokee Water District are uncontradicted. There were shipments of from as little as one to a high of seventeen loads made each day during the full time consumed in order to deliver the 6200 tons of pipe.
If the contention of Transit were upheld in this case the “occasional service” limitation appearing in common carrier certificates could be abrogated by the artifice of an oral agreement with a shipper, under which an unlimited number of truckloads could be hauled over an unlimited period of time. The fact that only one contract is involved does not change the nature of the loading of hundreds of separate shipments into “occasional service.” The limitation contained in the certificate is not subject to avoidance by such farfetched reasoning.
The judgment is affirmed.
Mr. Justice Day not participating.