Opinion by
Mr. Chief Justice Moore.
Plaintiff in error will be referred to as Ward, and defendants in error will be referred to as follows: Kendall Transport, Inc. as Kendall; North Denver Storage Company as North Denver; and others involved will be referred to by name.
On August 2, 1934, the Public Utilities Commission issued permit No. B-802 by which it awarded statewide hauling privileges as a “contract carrier” to one Arthur W. Kendall. He died in 1946 and ownership of the permit passed to his heirs who were his widow Gertrude and his two sons Harland and Donald. Gertrude Kendall, the widow, died and the administrator of her estate, together with Harland and Donald and all others having any rights in permit B-802, filed an application before the Commission seeking approval of a transfer of the permit to North Denver. A rather involved series of events took place subsequent to the death of Arthur W. Kendall. A family corporation was organized (Kendall Transport Inc.) to which we will refer as Kendall. In 1960, individual owners of the permit leased it and the equipment to Kendall, and in 1963 the lease was renewed, all of which was approved by the Commission. On March 16, 1960, Harland and Donald owned all of the stock in Kendall. They entered into a contract with one Harold E. Watson which involved the sale of the stock in Ken *210 dall to Watson; a transfer of the lease rights held by Kendall on permit B-802; and a transfer of the equipment of Kendall. The agreement provided that $15,000 was to be paid by Watson as consideration for the sale of the stock and the lease. The stock certificates were turned over to Watson on March 16, 1960, which was prior to the adoption by the Commission of a rule requiring its approval of controlling stock transfers as a condition of validity to the change in stock ownership. By this transaction Watson became owner of the controlling stock in Kendall, which was operating the business authorized under permit B-802 as lessees of Harland and Donald who actually owned the permit.
Further developments giving rise to this controversy, as found by the Commission, were the following:
“On February 25, 1964, Watson, as ‘Seller,’ and the North Denver Storage Company, as ‘Buyer,’ entered into an agreement, whereby Watson agrees to sell Permit No. B-802, together with certain equipment owned by Kendall Transport, Inc., to North Denver Storage for a stated consideration of $15,000.00 for the permit and $250,000.00 for the equipment. It should be noted that Watson cannot transfer Permit No. B-802 as he does not have title thereto, however, since the permit is under lease to Kendall Transport, Inc., which company he controls by virtue of stock ownership, his cooperation and approval is necessary to effect a transfer. The agreement also provides for 120 monthly payments to' Watson in the amount of $943.00 per month. The agreement recognizes that the Kendalls are the owners of record of said Permit No. B-802 and also expressly recognizes that the proposed transfer of Permit No. B-802 is to be made subject to the regulatory jurisdiction of the Commission.”
Ward began the hauling of bulk cement in 1959 at which time it purchased the contract carrier permit formerly owned by Veri Harvey, Inc. Ward has permit authority to transport cement in bulk anywhere in the state of Colorado and is a competitor of the business *211 controlled by Watson operating under authority of permit B-802.
The plaintiff in error, Ward, filed its second amended complaint before the Commission on August 21, 1962, in which it prayed that the Commission should decree that Watson’s acquisition of the control of KendaT was void; that Kendall “had abandoned and was estopped” from the transportation of cement in bulk; that the transportation of bulk cement by Watson was unlav/ful; that the decision of the Commission approving the lease of permit B-802 to Kendall be revoked; and that Kendall should be required to “cease and desist” from operating as a private carrier for the reason that the permit owners had abandoned the authorized activities thereunder. All parties claiming any interest were made defendants. Various answers were filed in which all material allegations were denied.
On March 9, 1964, the owners of permit B-802 filed their request for permission to transfer it to North Denver. Ward, and other carriers, protested the proposed transfer asserting generally that rights thereunder had been abandoned, and that available common carrier facilities were adequate to meet the demands for service.
The issues involving the transfer of permit B-802 and the complaint filed by Ward were consolidated for hearing before the Commission. After hearing, the transfer to North Denver was approved and the complaint of Ward was held to be without merit. Upon review in the district court the action of the Commission was sustained.
As grounds for reversal of the judgment, argument is presented under two captions as follows:
“I. New Operators Under Permit B-802 are Barred from Starting New Transportation Operations to the Detriment of Established Common Carriers, and the Permit Should Have Been Appropriately Restricted on Transfer. “II. The Commission Should Have Cancelled the Permit Because of Illegal Transactions Concerning the Permit *212 and Because of Illegal Operations Under the Permit.”
The arguments of Ward are countered by assertions that:
“1. The Commission did not abuse its discretion in authorizing transfer of Permit No. B-802 without restriction as to commodities.
“2. The evidence fully sustains the Commission in refusing to cancel Permit No. B-802.”
 The record before us is long, but careful analysis of its full content leads inescapably to the conclusion that there has been no misconception on the part of the Commission, or of the trial court, concerning applicable legal principles. Resolution of the controversy in this court depends entirely upon the question of whether the findings of fact made by the Commission are sufficiently supported by the evidence. We find, ample support for the finding by the Commission that the rights represented by permit B-802 had not been abandoned by Arthur W. Kendall or any successor in interest.
The record discloses, and the Commission found, in substance, that Watson started hauling bulk cement under authority of the Commission’s decision No. 498 issued in 1952. His operations under that purported authority were challenged and by opinion of this court, Public Utilities Commission of Colorado v. Watson, 138 Colo. 108, 330 P.2d 138, his operations thereunder were held illegal. He then obtained from the Commission another certificate, No. 4542, for transportation of bulk cement. That authority was also invalidated by this court. Watson thereupon came into control of operating rights under the permit B-802. Ward objects strenuously and argues that Watson should not be permitted to do under the authority of permit B-802 that which he could not do under the other permits issued by the Commission. With reference to this argument the Commission correctly ruled that,
“Nowhere in all the litigation is there a mandate by the commission, or by any court, that Watson, the individual, *213 could not ever be involved in the transportation of bulk cement.”
Controlling issues of fact have been resolved against Ward, and the facts as found are adequately supported by evidence. It follows that the judgment must be, and hereby is, affirmed.
Mr. Justice Hodges and Mr. Justice Kelley concur.