No. 27237

**Peoples Natural Gas Division of Northern Natural Gas Company v. Public Utilities Commission of the State of Colorado; Edwin R. Lundborg, Henry E. Zarlengo and Edythe S. Miller, Commissioners**

(567 P.2d 377)

Decided August 2, 1977.

Gresham, Stifler, Murphy & Gentry, P.C., Thomas C. Stifler, T. N. Wright, A. R. Madigan, for plaintiff-appellant.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Clinton P. Swift, Assistant, for defendant-appellee.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Peoples Natural Gas Division (Peoples Division) of Northern Natural Gas Company (Northern) operates in Colorado as a natural gas

was authorized. The new rate of return on capital as set by the PUC was calculated on the basis of a capital structure imputed to Peoples Division, rather than the capital structure of Northern which also operates non-utility subsidiaries.

The parties agree that the use of Northern's capital structure would have resulted in an additional $230,000 of revenue. Peoples Division sought review and reversal in the trial court of that portion of PUC Decision No. 87288 which imputed a capital structure. It argued that the use of the imputed capital structure in calculating the new rates resulted in denying Peoples Division a fair and reasonable return on investment. The trial court judgment affirmed the PUC decision and thus approved the imputation of a capital structure to Peoples Division. We affirm its judgment.

## I.

Peoples Division operates as a gas distribution utility in Colorado. It has no independent capital structure or corporate existence and it is undisputed that its capital requirements are provided entirely by Northern. The capital structure of Northern is:

| | |
|---|---|
| Long term debt | 52.082% |
| Preferred stock | 4.930% |
| Common equity | 42.988% |
| Reserves and Deferred taxes | -0- |
| | 100% |

The capital structure imputed to Peoples Division by the PUC is:

| | |
|---|---|
| Long term debt | 65.54% |
| Preferred stock | 3.54% |
| Common equity | 30.89% |
| Reserves and Deferred taxes | .03% |
| | 100% |

The capital structure used in calculating rates can have a significant impact on the rate of return on investment. The debt/equity ratio will affect the cost of capital needed to finance the rate base. In setting rates to be charged to consumers, the PUC will permit recoupment for the cost of debt and allow the utility a reasonable return on equity investment.

Peoples Division has not challenged the calculation of rate base nor the cost of the components of the capital structure as determined by the PUC. The imbedded cost of debt was found to be 7.040 per cent and the cost of preferred stock 6.908 per cent. 13.2 per cent was found to be a fair and reasonable return on common equity. With these costs of the components of the capital structure as given, it is apparent that variation

in the relative proportions of the components will vary the cost of capital to the utility.[1] The rate of return on rate base is directly related to the total cost of capital.

■ A guiding principle of utility regulation is that management is to be left free to exercise its judgment regarding the time of entering financial markets and its judgment regarding the most appropriate ratio between debt and equity in the capital structure. *E.g., Northwestern Bell Telephone Company v. State of Minnesota*, 299 Minn. 1, 216 N.W.2d 841 at 850 (1974). In *Mountain States Telephone and Telegraph Co. v. PUC*, 182 Colo. 269 at 281-282, 513 P.2d 721 at 727 (1973), we stated: ". . . that methods of raising capital should be left to the discretion of management unless there is a substantial showing that ratepayers are being prejudiced materially by the managerial options in the area of capital financing."

■ The PUC has recognized in its decision the theoretical nature and complexity of determining the best debt/equity ratio in order to minimize present capital cost without jeopardizing the ability to finance future projects which may be required to provide adquate service to the public. Unless it has been demonstrated by a substantial showing that ratepayers are materially prejudiced by the actual capital structure which finances utility operations, the PUC should use the actual capital structure in calculating rates. *Mountain States Telephone and Telegraph Co. v. PUC, supra.*

Peoples Division has, in effect, alleged that the PUC has hypothesized an ideal capital structure for Peoples Division and calculated rates based on this ideal rather than the actual capital structure. Finding No. 6 of the PUC in relevant part states:

"Respondent has proposed that the Commission adopt for this proceeding the capital structure of Northern Natural Gas Co. for Respondent's operations which are involved in this proceeding. The Staff recommended that certain adjustments be made to that capital structure. Northern Natural Gas Company is involved in substantial non-utility operations and the capitalization of those non-utility operations is included in the capital structure of Northern Natural Gas Company. When a utility engages in non-utility operations and finances those operations through its capital structure, of necessity its capital structure changes and under present conditions those changes ultimately result in a higher total cost of capital than if there were no non-utility operations, which materially affects and prejudices the utility ratepayers, because if no adjustments are made, a

---

[1]The court is aware as indicated in the record and briefs that the rate of return required by financial markets on debt or equity will ordinarily vary as the debt/equity ratio changes. While the PUC should consider this factor, it has not been argued here that it was ignored.

higher rate of return is required. Therefore, *adjustments should be made to the capital structure of Northern Natural Gas so that only the utility operations of Respondent will be reflected in the capital structure.*" (Emphasis added.)

To the extent that this finding might be read that ratepayers are prejudiced materially by any rate increase resulting from a change in capital structure, we expressly disapprove it. The amount of the rate increase must be weighed against potential long-term benefits to the service area and stability of the utility before it can be found that ratepayers are prejudiced materially. We agree with the Supreme Judicial Court of Massachusetts that a utility regulatory authority cannot base rates on a hypothetical rather than the actual capital structure of a utility unless "existing capital structures of regulated companies . . . so unreasonably and substantially vary from usual practice as to impose an unfair burden on the consumer." *Mystic Valley Gas Co. v. Department of Public Utilities*, 359 Mass. 420, 269 N.E.2d 233 at 239 (1971); *New England Telephone and Telegraph Co. v. Dept. of Public Utilities*, 360 Mass. 443, 275 N.E.2d 493 at 507-509 (1971); *also see Southern Bell Telephone and Telegraph Co. v. Mississippi Public Service Comm'n*, 237 Miss. 157, 113 So.2d 622 (1959) (regulatory authority granted right to adopt a hypothetical capital structure after actual capital structure found "imprudent and uneconomical").

However, a fair reading of the PUC's finding No. 6 is that the proper capital structure to be used in the rate calculation is one that reflects the actual capitalization of the utility operation. Thus, the PUC has not attempted to second-guess management on the best capital structure. Rather, the PUC has attempted to ascertain that part of the capital structure of Northern which is attributable to the utility operation. Although Peoples Division does not have an independent corporate capital structure, it is not unreasonable for the PUC to conclude that only a portion of the diversified corporation's capital structure is attributable to the utility operation, and that the portion so attributable is not a pro rata share of each component of Northern's capital structure. Since the purpose of exploring the debt/equity ratio is to establish the cost of the capital invested in the rate base, it is proper and within the PUC's authority to include only that portion of the capital structure which finances the rate base in the calculation of just and reasonable rates. Sections 40-3-101(1), 40-3-102, and 40-3-111, C.R.S. 1973. We conclude that it is within the power of the PUC to pierce corporate structures of corporations which also operate non-utility divisions or subsidiaries to impute a capital structure for the utility operation, which is reflective of the capitalization actually backing the utility operation. On that basis, we affirm the district court's approval of the imputation of a capital structure to Peoples Division and its affirmance of the PUC decision.

## II.

Peoples Division has also challenged the method employed by the PUC to impute a capital structure to Peoples Division. Finding of fact No. 6, summarizes the method employed:

"The Staff's adjustment is based on a study of A-rated industrials to determine what portion of their capital structure was equity, debt, and preferred stock. These figures were then applied to the amounts in Northern Natural Gas Company's capitalization that related to non-utility operations, and a portion was removed from the long-term debt, from preferred stock capital, and from common stock equity. In addition, an adjustment was made for reserves and deferred taxes. Staff's method is a reasonable way to determine the capitalization structure of Respondent actually used to provide utility services in the state of Colorado."

This method of determining the actual capitalization of the utility operation is not the only way to make this determination, and undoubtedly, under other factual situations, different methods would be more satisfactory. In this situation, the PUC's analysis of the utility operation, where it has definite expertise, is acceptable. From our review of the record of the PUC hearings and analysis of its findings, we conclude that the capital structure utilized in the rate calculations is reflective of the actual capitalization backing the utility operation, as isolated from the non-utility operations and subsidiaries of Northern.

The ultimate issue here is whether the rate of return allowed on the capital investment in Peoples Division is just and reasonable as required by sections 40-3-101 and 40-3-111, C.R.S. 1973. It has long been settled that a utility is entitled to a reasonable return on the value of the property which is used and useful to the rendering of its service to the public. *PUC v. Northwest Water Corporation,* 168 Colo. 154, 451 P.2d 266 (1969); *Glenwood Light and Water Co. v. City of Glenwood Springs,* 98 Colo. 340, 55 P.2d 1339 (1936). If the rate of return allowed is just and reasonable, and there is competent evidence to support the finding of the PUC, then a reviewing court may not substitute its judgment for that of the PUC. *Sangre de Cristo Electric Assn. v. PUC,* 185 Colo. 321, 524 P.2d 309 (1974); *PUC v. Northwest Water Corporation, supra.*

No basis appears in this record for this court to conclude that a just and reasonable rate of return has been denied the investors in the utility operation of Peoples Division or that the authorized rate of return calculated on the imputed capital structure is confiscatory. Viewed in the light most favorable to the PUC's findings and decision, we hold, as the trial court did, that there is competent evidence to support the use of the method employed in this case by the PUC to arrive at a just and reasonable rate increase for the utility operation of Northern.

## III.

As a result of imputing a capital structure to Peoples Division different from Northern's, the PUC made a downward adjustment to tax expense in the amount of $57,026. This adjustment occurred because interest on debt is tax deductible, and under the imputed capital structure, Peoples Division had more debt and interest expense than if a pro rata share of Northern's capital structure had been attributed to it. Peoples Division complains that this additional tax deduction is mythical, unjustified and improper.

Peoples Division is not a tax-paying entity. Northern pays the income taxes on Peoples Division's income, and takes deductions attributable to it. Therefore, in the rate making process, an assignment must be made of the taxes paid by Northern on behalf of Peoples Division and, in the process, the deductions taken by Northern on behalf of Peoples Division. The tax deduction is not mythical. Northern has taken the deduction for interest paid, and since the PUC has found that the interest was attributable to debt that capitalized the utility operation of Peoples Division, it is proper for that interest deduction to be assigned to Peoples Division.

The judgment is affirmed.

MR. JUSTICE ERICKSON does not participate.