## No. 28351

**Colorado Municipal League v. Public Utilities Commission of the State of Colorado; Commissioners Edwin R. Lundborg, Edythe S. Miller and Sanders G. Arnold and Public Service Company of Colorado and Home Builders Association; District Attorneys for the 1st, 2nd, 17th and 20th Judicial Districts; The City and County of Denver; Senator Barbara S. Holme; The Regents of Colorado University; Colorado Utilities Taskforce: Mountain Plains Congress of Senior Organizations; CF&I Steel Corporation; General Services Administration; Ideal Basic Industries, Inc.; and Friends of the Earth, Inc.**

(597 P.2d 586)

Decided July 23, 1979.

Gorsuch, Kirgis, Campbell, Walker and Grover, Leonard M. Campbell, William Hamilton McEwan, Susan K. Griffiths, Clinton P. Swift, for plaintiff-appellant.

J. D. MacFarlane, Attorney General, Mary Mullarkey, Acting Deputy, Tucker Trautman, Assistant, Eugene Cavaliere, Assistant, for defendants-appellees.

Kelly, Stansfield & O'Donnell, Bryant O'Donnell, James R. McCotter, for defendant-appellee, Public Service Company of Colorado.

*En Banc.*

MR. CHIEF JUSTICE HODGES delivered the opinion of the Court.

Public Service Company (PSC) requested from the Public Utilities Commission (PUC) approval for an increase in its retail gas and electric rates. The PUC suspended PSC's proposed effective date and granted various parties, including the Petitioner, Colorado Municipal League (League), leave to intervene.

After hearing, the PUC authorized the increase and concluded that the PSC should be permitted to "normalize" for ratemaking purposes the tax deferrals resulting from the use of accelerated depreciation with respect to property added during the test period. The PUC also ruled that municipal franchise taxes paid by PSC to municipalities pursuant to franchise agreements should be surcharged only to customers residing *within* the taxing municipalities. The League appealed several issues to the district court, which entered a judgment affirming the PUC's determinations. The League now appeals to this court on two of those issues: (1) Did the PUC err in allowing PSC to adopt a "normalization" accounting method for ratemaking purposes, and (2) Did the PUC err in ordering PSC to surcharge the payments made to municipalities pursuant to franchise agreements to the customers residing within those taxing municipalities.

We affirm the trial court's judgment as to the first issue and reverse as to the second issue.

## ISSUE I

At the outset we note that there is a presumption of validity of the PUC's orders and that the scope of our review is limited to clear abuses of the PUC's discretion. *Public Utilities Commission v. District Court in and for the County of Arapahoe,* 163 Colo. 462, 431 P.2d 773 (1967); *Public Utilities Commission v. Watson,* 138 Colo. 108, 330 P.2d 138 (1958); *Public Utilities Commission v. City of Loveland,* 87 Colo. 556, 289 P. 1090 (1930). The PUC has been granted the legislative authority to establish and regulate utility rates that are just and reasonable, Sections 40-1-1, *et. seq.,* C.R.S. 1973, and may do whatever it deems necessary or convenient, in keeping with statutory guidelines, to accomplish this legislative function. *Mountain States Telephone and Telegraph Company v. Public Utilities Commission,* 195 Colo. 130, 576 P.2d 544 (1978). *See also Mountain States Legal Foundation v. Public Utilities Commission,* 197 Colo. 56, 590 P.2d 495 (1979).

The League argues that the PUC erred in permitting PSC to "normalize" rather than "flow through" current tax savings resulting from utilizing an accelerated method of depreciation under Section 167 of the Internal Revenue Code.

"Normalization" is an accounting calculation which permits a utility to charge rates that reflect tax deductions which would result from straight line depreciation. The difference between those tax deductions and the deductions actually taken using accelerated depreciation are recorded and placed in a "deferred taxes" account. When the actual tax

deductions resulting from accelerated depreciation become less than deductions if straight line depreciation were used, the "deferred taxes account" is debited by the amount necessary to keep the tax deductions constant for ratemaking purposes. As a result the utility company will collect through its rates more money than actually paid in federal income tax in the early years of a property life and less than actually paid in the later years. Under "flow through" accounting the tax benefits of accelerated depreciation are flowed through to the ratepayers when realized. PSC would claim as operating expense for ratemaking purposes the actual federal income tax paid.

■ The League argues on the basis of statements in *Colorado Municipal League v. Public Utilities Commission,* 172 Colo. 188, 473 P.2d 960 (1970), that accelerated depreciation results, as a matter of law, in a permanent tax savings. The League contends that the PUC erred, therefore, in permitting normalization rather than returning the tax savings to the present ratepayer through the flow-through method of accounting. This argument was implicitly rejected by the United States Supreme Court in *FPC v. Memphis Light, Gas & Water Division,* 411 U.S. 458, 93 S.Ct. 1723, 36 L.Ed.2d 426 (1973). We also find the argument to be without merit.

■ In response to the United States Supreme Court's finding in *Memphis, supra,* that the 1969 Tax Act did not limit adoption of normalization to only post-1969 *expansion* property, the D.C. Court of Appeals upheld the FPC's implied determination that normalization did not, as a matter of law, result in tax savings, but rather under certain circumstances, resulted in a tax deferral. *Memphis Light v. FPC,* 500 F.2d 798 (D. C. Cir. 1974).[1] Whether normalization is proper depends on whether the rates established are just and reasonable.[2]

The PUC in this case determined that normalization did not necessarily result in a permanent tax savings. It recognized that the recent energy crisis may well effect the continued growth of PSC and that deferred taxes resulting from depreciation must therefore be paid as to each item of property following the crossover point. This reasoning is adequately supported by the evidence and logic. The PUC also found that the dramatically increased capital requirements of gas and electric utilities, combined with the need to meet those requirements to the greatest extent possible with internally generated funds to reduce capital cost, have justified the change

---

[1] "This decision [abandonment of flow through] . . . was based on the FPC's determination that, given . . . the particular facts . . . Texas Gas would no longer obtain a tax savings from the use of [normalization] . . . ." 500 F.2d at 801.

[2] To be "just and reasonable" this ratemaking process requires the balancing of investor and consumer interests. *Federal Power Commission v. Hope National Gas,* 320 U.S. 591, 603, 64 S.Ct. 281, 288, 88 L.Ed. 333, 345 (1944).

from flow-through to normalization. If the Company's cost of capital is reduced by the use of a deferred taxes account, the ratepayers, who must ultimately bear the burden of such costs, are benefitted. This conclusion was fully substantiated by expert testimony and other evidence. In addition, the PUC also found that normalization establishes the proper assignment of tax costs between present and future ratepayers.

We approve the finding of the PUC that normalization equitably assigns the total tax cost between present and future ratepayers.

In this case, unlike *Colorado Municipal League v. Public Utilities Commission, supra,* the PUC's conclusions are in keeping with its findings, which are amply supported by the evidence. Therefore, it is beyond our scope of authority to substitute our judgment for that of the PUC. *Yellow Cab, Inc. v. Public Utilities Commission,* 169 Colo. 357, 455 P.2d 877 (1969); *BDC Corp. of Colorado v. Public Utilities Commission,* 167 Colo. 472, 448 P.2d 615 (1968).

## ISSUE II

This court has recently found it discriminatory to surcharge franchise fees only to municipal customers within the municipality imposing the payment. *City of Montrose v. Public Utilities Commission,* 197 Colo. 119, 590 P.2d 502 (1979); *Colorado Municipal League v. Public Utilities Commission, supra;* and *Mountain States Telephone and Telegraph v. Public Utilities Commission,* 197 Colo. 56, 591 P.2d 577 (1979). We therefore find that part of the PUC's decision that surcharges franchise fees only to that municipality's customers to be an imposition of an unjust and unreasonable rate.

The district court's judgment on Issue I is affirmed. As to Issue II, the district court's judgment is reversed, and this cause is remanded for entry of a judgment in conformance with our reversal of this part of the district court's judgment.

MR. JUSTICE ROVIRA concurs in part and dissents in part.

MR. JUSTICE CARRIGAN does not participate.

MR. JUSTICE ROVIRA concurring in part and dissenting in part:

I respectfully dissent as to Issue II of the majority opinion.

While I recognize and respect the court's recent decisions on the subject of surcharging franchise fees and license or occupational taxes, it is my view that the Public Utilities Commission decision is supported by competent evidence, is within its legislative authority and is not discriminatory to customers within the municipality imposing the fee or tax.