## No. 27983

**The City of Montrose, Colorado, a Municipal Corporation v. The Public Utilities Commission of the State of Colorado and Edwin R. Lundborg, Henry E. Zarlengo, Edythe S. Miller, Individually and as Commissioners thereof, and Rocky Mountain Natural Gas Co., Inc.**

(590 P.2d 502)

Decided February 5, 1979.

John R. Kappa, for plaintiff-appellant.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, John E. Archibold, Special Assistant, Eugene Cavaliere, Assistant, for defendants-appellees.

Susan K. Griffith, for amicus curiae, Colorado Municipal League.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

On December 30, 1975, the Public Utilities Commission of the State of Colorado ordered Rocky Mountain Natural Gas Co., Inc., a licensed public utility, to surcharge municipal franchise charges to customers living within the municipalities imposing the franchise charges.[1] The appellants, the City of Montrose, and the Colorado Municipal League as amicus curiae, argue that the Commission's decision results in unjust and discriminatory rates and is arbitrary and capricious. We agree and reverse the judgment below.

Rocky Mountain Natural Gas Co., Inc. (Rocky Mountain) is certificated by the Public Utilities Commission (Commission) to serve Montrose and several other municipalities on the Western Slope. Rocky Mountain has entered into utility franchise agreements with each municipality it serves. Each agreement (except those of Dove Creek and Wellington) provides that the municipality will receive 2% of Rocky Mountain's gross receipts from sales within that municipality. In consideration for this fee, Rocky Mountain has received an exclusive franchise to serve that municipality.

On September 3, 1976, Rocky Mountain filed with the Commission its Advice Letter No. 64, requesting a rate increase. The City of Montrose (City) appeared as intervenor in the subsequent proceedings, styled Investigation and Suspension Docket No. 1073, to present testimony that

---

[1] This order was issued on the Public Utilities Commission's own motion. Commission Decision No. 87961, resulting from rate proceedings styled Investigation & Suspension Docket Nos. 992, 994, December 30, 1975.

municipal franchise charges should not be surcharged to municipal resident customers. The Commission rejected this position, Commissioner Zarlengo dissenting, and ordered the surcharging to continue. Decisions Nos. 89789, Dec. 7, 1976; 89939, Jan. 4, 1977; and 90103, Feb. 1, 1977.

The District Court for Montrose County affirmed the Commission's order and denied the City's motion for a new trial.

Prior to December 1975, Rocky Mountain treated these municipal franchise charges as general operating expenses. That is, the franchise charges were treated like any other cost of doing business for purposes of determining rates to be charged customers. The effect of the order is to require Rocky Mountain to compute its rates without including the cost of franchise fees, then to surcharge the rates of municipal residents with that cost. This results in municipal customers paying higher rates than non-municipal customers who are receiving the same service.

The appellants contend that the Commission's order in this case does not result in an equal distribution of costs to ratepayers, but rather results in unjust and discriminatory rates to municipal customers. They further allege that the order is arbitrary and capricious. They ask us to set aside the Commission's order, pursuant to our review power, set forth in section 40-6-115, C.R.S. 1973, and as amended, 1978 Supp. Subsections (3) and (5) define the scope of review of a Public Utility Commission decision in pertinent part:

"(3) Upon review, the district court shall enter judgment either affirming, setting aside, or modifying the decision of the commission. So far as necessary to the decision and where presented, the district court shall decide all relevant questions of law and interpret all relevant constitutional and statutory provisions. The review shall not extend further than to determine whether the commission has regularly pursued its authority, including a determination of whether the decision under review violates any right of the petitioner under the constitution of the United States or of the state of Colorado, and *whether the decision of the commission is just and reasonable and whether its conclusions are in accordance with the evidence . . . .*" (Emphasis added.)

"(5) . . . Appellate review may be obtained in the supreme court concerning any final judgment of the district court on review, affirming, setting aside, or modifying any decision of the commission, in the same manner and with the same effect as appellate review of judgments of the district court in other civil actions." Section 40-6-115, C.R.S. 1973.

■ It is clear that the above statute requires us to set aside a decision of the Commission which is unjust and discriminatory or arbitrary and capricious. *Mountain States Tel. & Tel. Co. v. Public Util. Comm'n,* 182 Colo. 269, 513 P.2d 721 (1973); *Consolidated Freightways Corp. v. Public Util. Comm'n,* 158 Colo. 239, 406 P.2d 83 (1965); *P.U.C. v. District Court,* 134 Colo. 324, 303 P.2d 692 (1956).

## I.

■ We agree with the appellant's contention that surcharging municipal franchise fees results in unjust and discriminatory rates.

The undisputed evidence at the rate-increase hearing established that the franchise fee paid by Rocky Mountain is bargained-for consideration for the right to exclusively serve the exacting municipality. Incident to this franchise are rights-of-way to create a line within the municipality without having to condemn land each time and pay damages therefor and the right to make repairs without having to compensate the city. The purpose of the franchise contract is to substitute the agreed franchise charge for the actual cost to Rocky Mountain of carrying on its business.

Indeed, Mr. Shockley, President of Rocky Mountain testified at the hearing that he would prefer to pay these franchise charges than to go through the administrative expense and inconvenience of condemnation procedures and compensation for damages. He stated that he believed the 2% franchise fee to be reasonable consideration for the rights and benefits granted to Rocky Mountain.

In a standard rate-making procedure, the PUC computes the utility's actual costs of doing business and then expenses those costs to all customers who receive the benefits of the utilities' services.[2] These costs, of course, include condemnation and repair expenses. Since a franchise contract is merely a change in form of assessing costs of doing business, as discussed above, it is logical that the franchise fees should be similarly expensed. Therefore, unless non-municipal residents receive no benefit from Rocky Mountain's exclusive franchise with the City of Montrose, we see no justification for the surcharge in this case.

The testimony clearly established that rural as well as municipal residents receive benefits from the franchise. It was agreed that it is more expensive to furnish service to rural customers than to customers in the more densely populated municipalities. In fact, were it not for the profitability of municipal service, there is some question whether rural residents would have service at all.

Moreover, because of the disparity in Rocky Mountain's cost between rural and municipal service, it was admitted that municipal customers have always "subsidized" rural customers. This occurs because the costs to the utility are divided equally among all ratepayers, when rates are first determined, regardless of differences in cost of service. Such a practice is clearly necessary to avoid hamstringing a public utility with the task of setting individual rates, a task that would increase the utility's administrative costs tremendously. Whatever discrimination does exist in

---

[2] The authority of the Public Utilities Commission to establish reasonable rates is found in Article XXV of the Colorado Constitution. The standards and procedures to be followed are found in Title 40, C.R.S. 1973, especially Articles 3 and 6.

the standard rate-making procedure has generally been ignored as *de minimis*.

Given these facts, we conclude that Rocky Mountain's former practice of expensing franchise charges was not discriminatory against rural customers. Instead, that procedure was a reasonable method of offsetting the above-mentioned factors which have always operated *in favor* of non-municipal customers, and it was consistent with the practice of expensing costs of doing business.

It follows that surcharging the franchise fees only to municipal customers *is* discriminatory. Those ratepayers already subsidize the rural customers by the fact that rural service is more expensive. To increase the municipal ratepayers' bill by surcharging the franchise fee only increases this subsidization: As Rocky Mountain minimizes its costs (by excluding the franchise fees from its expenses), the municipal customers must make up a proportionally larger share of the gross receipts that Rocky Mountain must collect to maintain its profit margin.

In addition, we point out that municipal customers alone are providing a home base for a public utility which services rural and municipal customers alike. The result is that municipal residents, by virtue of this order, are paying considerably more for the same service received by rural residents, whom it is actually more expensive to serve. Such unjust and discriminatory practices by the Public Utility Commission cannot be condoned, and today we hold invalid Decision No. 87961.[3]

## II.

Finally, we hold that the Commission's order is arbitrary and capricious. It is clear from the record that this order was issued to implement the Commission's new policy of surcharging municipal fees to municipal residents, as recently enunciated in the *Mountain Bell* case. There was no study done in this case to determine how costs of service for a natural gas utility break down along municipal/non-municipal lines, although counsel for the Commission admitted that such a study is feasible. Nor was there any discussion in the Commission's order of the disparate service costs between municipal and non-municipal customers. The order was issued solely as a matter of administrative convenience. We find the order to be arbitrary, capricious, and invalid.

We do not hold today that different rates may not be charged different categories of customers among whom costs of service vary. Where all relevant costs are computed and attributed to the respective customers responsible for them, different rates would adequately and fairly reflect the differences in costs of service. Such a practice would

---

[3] Because of our decision in this case, we need not discuss the alleged conflict between Article XXV, *supra,* footnote 3, and Article XX, Section 4, which grants to the voters of a home-rule city the power to grant and control municipal franchises.

clearly be just and reasonable. As pointed out above, however, no attempt was made in this case to ascertain costs of service along municipal/non-municipal lines.

The judgment of the trial court is reversed and the case remanded with directions to set aside the order of the Public Utilities Commission and proceed consonant with the views expressed herein.

MR. JUSTICE CARRIGAN dissents.

MR. JUSTICE CARRIGAN dissenting:

The majority opinion reverses findings by the Public Utilities Commission and the district court. Both the P.U.C. and the district court upheld as not unjust or discriminatory a requirement that only city ratepayers, rather than both city-dwellers and rural ratepayers, bear the burden of a city's utility franchise charge. The effect is to require that those living outside the city which exacts the franchise fee, as well as residents of the city, bear the economic burden of the city's charge.

In essence, if not in form, the city is raising, through its utility franchise charge, funds it would otherwise have to raise by taxation. These funds presumably are used to provide city services to city residents. They do not benefit rural ratepayers. Obviously, if these services to city dwellers had to be paid for through taxes, rural residents could not be required to pay such city taxes.

Surely this Court is in no better position than the P.U.C. or the district court to characterize as "just" or "unjust" the P.U.C. determination that city-dwellers ought to pay the extra expense imposed by their city fathers on the cost of providing utility service. The P.U.C. heard and considered the evidence and the matter is one peculiarly within its expertise. That specialized ratemaking body is in a better position than we are to decide what is more just in these circumstances where "justice" to the city dweller is "injustice" to the rural resident.

I would uphold the P.U.C. and affirm the district court.