The CITY OF MONTROSE, Colorado, a municipal corporation, Plaintiff-Appellant,

v.

PUBLIC UTILITIES COMMISSION OF the STATE OF COLORADO and Edythe S. Miller, Sanders G. Arnold, and Daniel E. Muse, Individually and As Commissioners Thereof, and Rocky Mountain Natural Gas Co., Inc., Defendants-Appellees.

No. 80SA38.

Supreme Court of Colorado, En Banc.

June 15, 1981.

---

620

John R. Kappa, City Atty., Montrose, for plaintiff-appellant.

Jane Roberts, Gen. Counsel, Wheat Ridge, for Colorado Municipal League, amicus curiae.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., John E. Archibold, Sp. Asst. Atty. Gen., Denver, for defendants-appellees, The Public Utilities Commission of State of Colo., Edythe S. Miller, Sanders G. Arnold and Daniel E. Muse, individually and as commissioners thereof.

LOHR, Justice.

The City of Montrose (City) appeals from a judgment of the district court affirming an order of the Public Utilities Commission (PUC, or Commission) concerning the manner in which municipal franchise charges are passed along to the customers of Rocky Mountain Natural Gas Company (Rocky Mountain).

Municipal franchise charges are sums paid to a municipality by utilities such as Rocky Mountain by agreement for the privileges of providing utility service within that municipality and of constructing and maintaining utility lines in streets, alleys and other municipal property. The PUC required that Rocky Mountain surcharge municipal franchise charges to all of its customers. The order also required that each customer's share of the franchise charges be set forth as a separate item on his bill. The City asserts that the PUC's order is unlawful in several respects. We disagree with these contentions and so affirm the judgment of the district court.

This controversy had its beginnings when Rocky Mountain filed for a rate increase with the PUC in September of 1976. The City, which was a party to a franchise agreement with Rocky Mountain and was also a customer of that utility, appeared as an intervenor in the proceeding and contested the surcharge of municipal franchise charges solely to customers residing within the respective municipalities served by Rocky Mountain (municipal customers).[1] As part of its order in the rate case, the PUC concluded that Rocky Mountain should surcharge franchise charges solely to municipal customers. The City appealed to the district court, which affirmed the action of the PUC. The City then appealed to this court from the district court's judgment.

On February 5, 1979 we announced our opinion in *City of Montrose v. Public Utilities Commission*, 197 Colo. 119, 590 P.2d 502 (1979). There, we held that the PUC's allocation of franchise charges to municipal customers exclusively resulted in unjust and discriminatory rates and that the PUC's order was arbitrary and capricious because it was not supported by any evidence in the record. We therefore reversed the judgment of the trial court and remanded the case to that court with directions to set aside the order of the PUC.

In April of 1979 the City filed a motion with the PUC requesting it to order Rocky Mountain to file new tariffs consistent with our decision in *City of Montrose v. Public Utilities Commission, supra.* The City also requested that the PUC "not provide for a company wide surcharge to all customers" or list those charges separately on the cus-

1. Rocky Mountain originally had been ordered to use this method of passing on franchise charges in December of 1975 in PUC Decision No. 87961.

tomer's bill, but rather that the PUC treat municipal franchise charges as operating expenses.

On April 24, 1979, without taking any additional evidence, the PUC entered its order on the City's motion (Decision No. C79–617). The Commission ordered Rocky Mountain to file new tariffs, but, contrary to the City's request, the order also stated that the "tariffs shall provide that the franchise taxes or charges imposed by all municipalities will be surcharged to all customers of Rocky Mountain Natural Gas Company, Inc. and such taxes or charges in the aggregate shall be set forth on each customer's bill as a separate item."

The City again appealed to the district court, which affirmed the order of the PUC. The district court held that the application of a system-wide surcharge was consistent with our opinion in *City of Montrose v. Public Utilities Commission, supra,* and that the PUC's decision to require separate listing of the franchise charge on Rocky Mountain's customer billings was "a matter of practice or procedure deemed by the Commission to be in the customer's best interest," and appeared to be a valid exercise of the Commission's discretion and judgment.

In its appeal to this court, the City contends (1) that the Commission's order regarding franchise charges is arbitrary, capricious and unsupported by substantial evidence in the record; (2) that the order is unjust, unreasonable and discriminatory; (3) that it adversely affects municipal franchise powers protected by Art. XX, § 4 and Art. XXV of the Colorado Constitution; and (4) that the order violates constitutional guarantees of equal protection of the laws. We find no merit in any of these arguments and so affirm the judgment of the district court.

The PUC's order can be broken into two distinct parts: First, the decision to surcharge municipal franchise charges to all customers of Rocky Mountain instead of including this expense as an operating cost for purposes of rate-making; and, second, the decision to state those charges separately on the bills sent to Rocky Mountain's customers.

I.

THE DECISION TO SURCHARGE MUNICIPAL FRANCHISE CHARGES

 The Public Utilities Commission is invested with broad authority to regulate public utilities in this state. *Colo. Const.* Art. XXV; section 40–3–102, C.R.S.1973; *see Mountain States Telephone and Telegraph Co. v. Public Utilities Commission,* 195 Colo. 130, 576 P.2d 544 (1978). The powers delegated to the Commission on these matters are legislative and not judicial. *Colorado Ute Electric Association v. Public Utilities Commission,* 198 Colo. 534, 602 P.2d 861 (1979); *Mountain States Telephone and Telegraph Co. v. Public Utilities Commission, supra.* The Commission therefore has considerable discretion in its choice of the means to accomplish its functions. *Colorado Ute Electric Association v. Public Utilities Commission, supra.* However, the PUC does not have limitless legislative prerogative. For example, by statute the legislature may restrict the legislative authority delegated to the PUC. *Mountain States Legal Foundation v. Public Utilities Commission,* 197 Colo. 56, 590 P.2d 495 (1979).

 Another check on the exercise of the PUC's actions is the ability of a party to a Commission proceeding to seek judicial review of the Commission's final decisions. Sections 40–6–113 to 115, C.R.S.1973. Consonant with the Commission's extensive authority, however, the scope of permissible judicial review is relatively narrow. The district court may only ensure that the Commission has regularly pursued its authority, that its decisions are just and reasonable and that the Commission's conclusions are "in accordance with the evidence" before it. Section 40–6–115(3), C.R.S.1973. PUC decisions which are not supported by substantial evidence must be set aside. *See Morey v. Public Utilities Commission,* Colo., 629 P.2d 1061 (1981); *Sangre de Cristo Electric Ass'n. v. Public Utilities Commission,* 185 Colo. 321, 524 P.2d 309 (1974).

The PUC entered the order in this case without taking additional evidence on the issue of franchise charges and the manner in which they were to be allocated. Therefore, the decision challenged here must find support in the same record which we had before us in *City of Montrose v. Public Utilities Commission, supra.* In that case the issue was whether the PUC could order Rocky Mountain to surcharge only municipal customers with the franchise charge imposed by the respective municipalities. We determined from the record that this method of allocation was ordered pursuant to the Commission's policy, adopted in December 1975, of surcharging municipal fees to municipal residents, *see Colorado Municipal League v. Public Utilities Commission,* 197 Colo. 106, 591 P.2d 577 (1979), and was not based on any evidence of the actual differential in service costs between municipal and non-municipal customers served by Rocky Mountain. Because the surcharge to municipal customers was ordered as a matter of administrative convenience unsupported by any factual basis in the record we held the order to be arbitrary and capricious.[2] *City of Montrose v. Public Utilities Commission, supra.*

For essentially the same reason, the City urges that the PUC's order requiring surcharging of franchise charges to *all* of Rocky Mountain's customers is arbitrary and capricious. It claims that those expenses should be charged as operating costs and included in the formula for computing reasonable rates.[3] We do not agree with this contention.

There is evidence in the record that the utility will recover the full amount of the franchise charges paid by it whether those charges are included as operating costs in computing the basic gas service rates or surcharged independently. The portion of the total amount of franchise fees which is passed on to each customer may possibly be different depending on which method is used; we cannot determine this with certainty from the record. But the City does not contend that use of the surcharge method would result in unreasonable or unjust rates. Its challenge simply revolves around the fact that franchise charges are treated differently than other arguably similar expenses.

"[I]t is the result reached, not the method employed, which determines whether a rate is just and reasonable." *Colorado Ute Electric Association v. Public Utilities Commission, supra,* 602 P.2d at 864. Rate making is not an exact science but a legislative function involving many questions of judgment and discretion. *Id.* We have held that the orders of the PUC are presumed to be reasonable. *Contact-Colorado Springs, Inc. v. Mobile Radio Telephone Service, Inc.,* 191 Colo. 180, 551 P.2d 203 (1976). Thus, when two equally reasonable courses of action are open to the Commission, the reviewing court cannot substitute its judgment for that of the Commission in selecting the appropriate alternative. *Id.; Colorado Ute Electric Association v. Public Utilities Commission, supra.*

The City has produced no evidence that it is any less reasonable to allocate municipal franchise charges by a system-wide surcharge than by incorporating those charges into Rocky Mountain's rate formula as operating costs. Nor has it shown that the surcharge method will result in discriminatory rates for any class of Rocky Mountain's customers.[4] In the absence of any evidence

---

2. We also held that the order resulted in unjust and discriminatory rates. The uncontroverted evidence in the record was that Rocky Mountain's municipal rate payers already subsidize rural customers in that the utility's cost are divided on the same basis among all rate payers despite the fact that rural service is more expensive to provide. We found that the added surcharge of franchise charges to municipal customers increased this subsidization.

3. This was the method used prior to the formulation of the PUC's policy to surcharge the respective franchise charges to municipal customers only. *See City of Montrose v. Public Utilities Commission, supra.*

4. Because the surcharge is passed on to all of Rocky Mountain's customers as a percentage of their bills, the problems concerning discrimination noted in *City of Montrose v. Public Utilities Commission* are no longer present.

that the surcharge method of allocation is inherently unsound we cannot insist that it be abandoned. *Colorado Ute Electric Association v. Public Utilities Commission, supra; see Peoples Natural Gas Division v. Public Utilities Commission*, 193 Colo. 421, 567 P.2d 377 (1977).

It appears clear that it is the fact that the franchise charges are "broken out" on the customer's bill and not the actual rate resulting from a surcharge method of allocation to which the City most strenuously objects. The remaining issues before us, therefore, concern whether the PUC's order requiring Rocky Mountain to show those charges separately on its bills was an abuse of discretion or otherwise unlawful.

## II.

### THE DECISION TO BREAK OUT MUNICIPAL FRANCHISE CHARGES ON CUSTOMER BILLINGS

■ The PUC has a general responsibility to protect the public interest regarding utility rates and practices. *Public Utilities Commission v. District Court*, 186 Colo. 278, 527 P.2d 233 (1974); *Consolidated Freightways Co. v. Public Utilities Commission*, 158 Colo. 239, 406 P.2d 83 (1965); *see* section 40–3–101(2), C.R.S. 1973. In fulfilling that function, in the area of utility regulation the PUC has "broadly based authority to do whatever it deems necessary or convenient to accomplish the legislative functions delegated to it." *Mountain States Telephone & Telegraph Co. v. Public Utilities Commission, supra*, 97 Colo. at 135, 576 P.2d at 547. (PUC has authority to assess reasonable attorneys' fees incurred by protestor or intervenor against utility in proceedings before it.)

■ It cannot be seriously disputed that the PUC has authority to regulate the information which public utilities include in their customer billings. *See* 4 C.C.R. 723–3 at 3.01–9. In this case the decision to break out franchise charges on customer billings

is based upon the value to utility customers of this information. The Commission specifically found that such practices had been beneficial in the past with respect to providing customers with pertinent information as to their respective proportionate shares of certain taxes[5] and determined that a similar benefit would flow from providing information about franchise charges. Judgments of this nature fall squarely within the discretion and expertise of the Commission.

■ Moreover, the City's contention that it is arbitrary to require separate statement of franchise charges while not so treating "other taxes" proceeds from a flawed premise. The franchise charge at issue here is not a tax. It is a charge established by contract between the City and Rocky Mountain to enable Rocky Mountain to serve City customers and to place its gas lines on City property as necessary in the utility's operations. The fact that the franchise charge is based on a percentage of Rocky Mountain's revenues from customers within the City does not make it a tax. The judgment whether each utility customer should be advised of his share of a franchise charge even though similar information as to various taxes is not set forth on his billing is properly committed to the PUC and not to the courts. Except on a showing of a clear abuse of discretion we will not substitute our judgment for that of the PUC as to the propriety of such a billing practice. The City has made no such showing here.

■ We can find no merit in the City's contention that the PUC's order requiring Rocky Mountain to break out municipal franchise charges adversely affects the City's ability to collect such charges from utilities under its constitutional franchise powers. *See Colo. Const.* Art. XX, § 4 and Art. XXV. The City's fears that public dissatisfaction with the franchise charges will result from informing Rocky Moun-

---

5. By statute, sales taxes must be separately stated on customer billings. Section 39–26–106(2)(a), C.R.S. 1973. The same is not true of other taxes such as federal and state income taxes, and property taxes.

tain's customers of their share of those charges, and that such dissatisfaction will pose a threat to the continued existence of the City's constitutional franchise powers, are speculative at best and provide no basis for overturning the PUC's decision.

 The City's equal protection argument is also without merit. The Commission's decision to break out municipal franchise charges while not separately listing arguably similar expenses on the customer billings neither confers a benefit nor imposes a hardship on any particular class of persons. *See People v. Childs*, Colo., 610 P.2d 101 (1980).[6] Its only effect is to pro-

vide information to all of Rocky Mountain's customers. The guarantees of equal protection of the laws in the Colorado and United States Constitutions simply are not implicated by the Commission's decision in this case.

The decision of the district court is affirmed.

---

6. The right to equal protection of the law "guarantees only that all parties who are similarly situated receive like treatment by the law." *People v. Childs, supra*, 610 P.2d at 102. *See U.S.Const.* amend. XIV; *Colo. Const.* Art.

II, § 25. As we have often observed, Colorado's constitutional guaranty of due process of law includes the right to equal protection of the laws. *E. g., Millis v. Board of County Commissioners*, Colo., 626 P.2d 652 (1981).