CITY OF COLORADO SPRINGS and City of Aurora, Colorado, municipal corporations, Plaintiffs–Appellants and Cross–Appellees,

v.

The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF EAGLE, State of Colorado; George A. Gates, Johnette Phillips, James E. Johnson, Jr., in their official capacities as individual members of said Board; The Board of County Commissioners of the County of Eagle, in its capacity as the permitting authority under § 24–65–101 et seq., C.R.S.; The Eagle County Planning Commission; Mark Donaldson, Robert Tether, Arlene Quenon, Robert Morris, Donald Price, in their official capacities as individual members of said Commission; The County of Eagle, State of Colorado; Holy Cross Wilderness Defense Fund; and Vail Valley Consolidated Water District, Defendants–Appellees and Cross–Appellants.

Nos. 93CA0386, 93CA0412.

Colorado Court of Appeals, Div. III.

Nov. 17, 1994.

Rehearing Denied Dec. 15, 1994.

Certiorari Denied June 5, 1995.

Anderson, Johnson & Gianunzio, P.C., Mark T. Pifher, William Kelly Dude, Colorado Springs, for plaintiffs-appellants and cross-appellees.

James R. Fritz, County Atty., Eagle, Holme Roberts & Owen, L.L.C., Dennis J. Herman, Henry W. Ipsen, Mary H. Stuart, Denver, for defendants-appellees and cross-appellants Bd. of County Com'rs of County of Eagle, State of Colo., George A. Gates, Johnette Phillips, James E. Johnson, Jr., Bd. of County Com'rs of County of Eagle, State of Colo., Eagle County Planning Com'n, Mark Donaldson, Robert Tether, Arlene Quenon, Robert Morris, Donald Price, County of Eagle, State of Colo.

Sierra Club Legal Defense Fund, Lori J. Potter, Denver, Land and Water Fund of the Rockies, Frances M. Green, Boulder, for defendants-appellees and cross-appellants Holy Cross Wilderness Defense Fund.

Grimshaw & Harring, P.C., Wayne B. Schroeder, Ronald L. Fano, Denver, for defendants-appellees and cross-appellants Vail Valley Consolidated Water Dist.

Opinion by Judge DAVIDSON.

In this action pursuant to C.R.C.P. 106, and C.R.C.P. 57, defendants, Eagle County; the Eagle County Board of Commissioners; George A. Gates, Johnette Phillips, and James E. Johnson, in their official capacities as individual members of the Eagle County Board of Commissioners; the Eagle County Planning Commission; Mark Donaldson, Robert Tether, Arlene Quenon, Robert Morris, and Donald Price, in their official capacities as individual members of the Eagle County Planning Commission (collectively the Board); Holy Cross Wilderness Defense Fund; and Vail Valley Consolidated Water District (Vail Valley), appeal from the judgment of the trial court vacating a denial of certain land use permits to plaintiffs, the City of Aurora and the City of Colorado Springs (the cities), and remanding the matter to the Board of County Commissioners. The cities cross-appeal from the trial court's dismissal of certain of their claims against the Board. We affirm in part and reverse in part.

The cities hold water rights in the Holy Cross Wilderness area, located in Eagle County. In order to complete a transbasin water diversion project there, the cities applied to the Board for a special use permit, a permit to conduct a major extension of an existing water collection system, and a permit to conduct a municipal water project, pursuant to regulations enacted under § 24–65.1–101, et seq., C.R.S. (1988 Repl.Vol. 10B) (the Land Use Act) and § 29–20–101, et seq., C.R.S. (1986 Repl.Vol. 12A) (the Local Government Land Use Control Act). After a series of public hearings, the Board denied the permits, and the cities filed this C.R.C.P. 106 action protesting the denial. *See* § 24–65.1–502, C.R.S. (1988 Repl.Vol. 10B).

On review, the trial court found that certain of the land use regulations relied upon by the Board to deny the permits were preempted by various state and federal statutes. The trial court then found the remaining regulations, concerning wetlands protection and nuisance factors, to be valid under the Land Use Act, but concluded that it could not discern whether the Board would have denied the permits absent consideration of the preempted regulations. Thus, it vacated the denial of the permits and remanded the matter to the Board for reconsideration.

The Board denied the permits on remand and the cities again appealed. On different grounds, the trial court again vacated the Board's order and, in addition, ordered the Board to approve the permits because it found that the Board had violated due process by improperly refusing to consider a final wetlands mitigation report submitted to the Army Corps of Engineers.

On the Board's motion for reconsideration, the trial court deleted the portion of its order requiring approval of the permits and remanded the matter with instructions to consider the final wetlands mitigation report.

We will address the matters raised by defendants on appeal first and then consider the issues raised by the cities' cross-appeal.

I.

Defendants argue that the trial court's first order vacating the denial of the permits and remanding the matter to the Board was in error. We agree.

A.

Review of an agency decision under C.R.C.P. 106(a)(4) is limited to matters contained within the record of the proceeding before the agency and "[t]he burden is on the [party] challenging the action to overcome the presumption that the agency's acts were proper." *Fedder v. McCurdy,* 768 P.2d 711, 713 (Colo.App.1988).

Consequently, a court may reverse an administrative tribunal's decision under C.R.C.P. 106 if there is no competent evidence to support its decision, that is, only if "the ultimate decision of the administrative body is so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority." *Ross v. Fire & Police Pension Ass'n,* 713 P.2d 1304,

1309 (Colo.1986); *Platte River Environmental Conservation Organization, Inc. v. National Hog Farms, Inc.*, 804 P.2d 290 (Colo. App.1990) (The relative merits of the decision are not within the inquiry on review.).

Section 24–65.1–501, C.R.S. (1988 Repl.Vol. 10B) provides that, if a county has designated certain matters as areas or activities of state interest under § 24–65.1–401, C.R.S. (1988 Repl.Vol. 10B), and as defined by §§ 24–65.1–201 and 24–65.1–203, C.R.S. (1988 Repl.Vol. 10B), the county should enact a permitting process for future development.

Pursuant to this authority, the Board designated as activities of state interest the site selection and construction of major new domestic water and sewage treatment systems, major extensions of existing domestic water and sewage treatment systems, and the efficient utilization of municipal and industrial water projects. The Board then developed guidelines for the administration of these designated matters of state interest as required by § 24–65.1–402, C.R.S. (1988 Repl. Vol. 10B) and a permitting process as prescribed by § 24–65.1–501.

According to § 24–65.1–501(4), C.R.S. (1988 Repl.Vol. 10B):

> [The county] may approve an application for a permit to conduct an activity of state interest if the proposed activity complies with the [county's] regulations and guidelines for conduct of such activity. If the proposed activity does not comply with the guidelines and regulations, the permit shall be denied.

■ Here, the trial court found that several, but not all, of the criteria which the Board had applied to the cities' proposed project were preempted. The court then remanded the matter to the Board for reconsideration in light of the remaining criteria.

In doing so, defendants argue, the trial court overlooked the regulatory provisions which implement § 24–65.1–501(4), and which dictate that the permit must be denied if the applicant fails to satisfy *all* of the criteria contained in the applicable regulations. We agree.

According to this regulatory scheme—and the cities apparently do not dispute this—if a proposed project fails to satisfy even one criterion, the Board must deny the requested permits. *See* Eagle County Land Use Regulations 6.04.15(2) ("The permit [for a major extension of existing domestic water or sewage treatment system] shall be denied if the applicant fails to satisfy all the criteria outlined in Subsection 6.04.15(1)."); and Eagle County Land Use Regulations 6.05.16(2) ("The permit [for development of a municipal or industrial water project] shall be denied if the applicant fails to satisfy all the criteria outlined above.").

Therefore, the court erred by remanding on the ground that it was unable to ascertain what the Board's decision would have been had the preempted criteria not been considered. The trial court should have focused solely upon whether the record contained any competent evidence to support the determination that any one of the remaining criteria had not been met.

### B.

Defendants next argue that a remand to the trial court at this point is unnecessary as the Board's original decision is supported by competent evidence. Again, we agree.

■ In a C.R.C.P. 106 appeal, the appellate court is in the same position as the trial court concerning review of the agency proceeding. *Empiregas, Inc. v. County Court*, 713 P.2d 937 (Colo.App.1985). And, our review of the record reflects ample evidence to support the Board's determination that the criteria in the two areas which the trial court found were not preempted—wetlands protection and nuisance factors—had not been satisfied.

For example, there was extensive testimony at the public hearings that the cities' plan to mitigate the impact of water diversion on the Holy Cross wetlands was deficient and would be ineffective to prevent a substantial destruction of certain plant species in the area, including a rare species of moss which had been found in very few areas in the continental United States. Other witnesses testified that the plans for mitigation of the noise, dust, and other disruptions caused by the construction of tunnels would not prevent

a degradation of the recreational and scenic value of the area.

■ All the findings necessary for a resolution of the issue under the regulatory scheme were made by the Board and are supported by the record. Therefore, the trial court was required to uphold the denial of the permits; it had no basis upon which to remand the matter for further consideration. *See Garland v. Board of County Commissioners,* 660 P.2d 20 (Colo.App.1982); *Cline v. City of Boulder,* 35 Colo.App. 349, 532 P.2d 770 (1975).

### C.

Because we have concluded that the trial court's first order remanding the matter to the Board for further consideration was erroneous, we need not address either defendants' or the cities' arguments concerning the effect of the Board's subsequent refusal to take administrative notice of the final wetlands mitigation report.

### D.

Similarly, because we have determined that the trial court's first order was invalid, and that the Board's original order is supported by competent evidence in the record, we need not reach defendants' argument that the trial court erred by finding that certain of the Eagle County Land Use regulations were preempted.

### II.

After it determined that certain specific Eagle County Land Use regulations were preempted by state and federal regulation, the trial court found, *inter alia,* that the Board had relied properly upon regulations concerning wetlands protection and nuisance factors. On cross-appeal, the cities argue that, even if there is competent evidence in the record to support the Board's decision, the Board exceeded its authority by enacting and applying the non-preempted regulations.

Specifically, the cities contend that the Board exceeded its statutory authority because the wetlands and nuisance regulations, as enacted, and as applied to their permit applications, do not serve the objectives of the statutory criteria set forth in § 24–65.1–204. We disagree and conclude that the regulations do not exceed the statutory authority of the Land Use Act and the Local Government Land Use Control Act, either facially or as applied by the Board.

Section 24–65.1–204, provides, in pertinent part:

(1)(a) New domestic water and sewage treatment systems shall be constructed in areas which will result in the proper utilization of existing treatment plants and the orderly development of domestic water and sewage treatment systems of adjacent communities.

(b) Major extensions of domestic water and sewage treatment systems shall be permitted in those areas in which the anticipated growth and development that may occur as a result of such extension can be accommodated within the financial and environmental capacity of the area to sustain such growth and development....

(8) Municipal and industrial water projects shall emphasize the most efficient use of water, including, to the extent permissible under existing law, the recycling and reuse of water. Urban development, population densities, and site layout and design of storm water and sanitation systems shall be accomplished in a manner that will prevent the pollution of aquifer recharge areas.

The Board found that the cities' application for a major extension of a domestic water system did not meet the criteria set out in Eagle County Land Use Regulation 6.04.15(1)(*o*) which states that:

The proposed development or its associated collector or distribution system will not significantly deteriorate aquatic habitats, marshlands and wetlands, groundwater recharge areas, steeply sloping or unstable terrain, forests and woodlands, critical wildlife habitat, big game migratory routes, calving grounds, migratory ponds, nesting areas and the habitats of rare and endangered species, public outdoor recreational areas, and unique areas of geologic, historic or archaeological importance.

The Board also found that the cities' application for a major extension of a domestic water system did not meet the criteria in Eagle County Land Use Regulation 6.04.15(1)(p) which states that:

> The proposed development or its associated collector or distribution system will not significantly degrade existing natural scenic characteristics, create blight, or cause other nuisance factors such as excessive noise or obnoxious odors.

Finally, the Board found that the cities' application for development of a municipal water project did not meet the requirements of Eagle County Land Use Regulations 6.05.15(1)(g) which states that:

> The proposed development and the potential diversions of water from the source development area will not significantly deteriorate aquatic habitats, marshlands and wetlands, groundwater recharge areas, steeply sloping or unstable terrain, forests and woodlands, critical wildlife habitat, big game migratory routes, calving grounds, migratory ponds, nesting areas and the habitats of rare and endangered species, public outdoor recreational areas, and unique areas of geologic, historic or archaeological importance.

The cities' appear to make three distinct arguments in regard to these regulations.

### A.

The cities first argue that the wetlands and nuisance regulations do not relate to the statutory guidelines. We disagree.

Section 24–65.1–402(3), C.R.S. (1988 Repl. Vol. 10B), states that: "No provision of this article shall be construed as prohibiting a local government from adopting guidelines or regulations containing requirements which are more stringent than the requirements of the criteria listed in [§ 24–65.1–204]."

When considering an argument that § 24–65.1–402(3) represents an unconstitutional delegation of legislative powers to local governments because the grant of authority to regulate activities of state interest lacked specificity, the supreme court found that the broad and general grant of authority afforded by this provision was understandable

"since the guidelines contained in [§ 24–65.1–204] are phrased in general terms to provide local governments with the flexibility to achieve the objectives in the guidelines in an efficient manner. Even though local governments may adopt more stringent regulations, the regulations must still serve the objectives contained in the guidelines in [§ 24–65.1–204]." *City & County of Denver v. Board of County Commissioners,* 782 P.2d 753, 760 (Colo.1989).

■ Eagle County Land Use Regulation 6.04.15(o) requires, *inter alia,* that the proposed development must not significantly deteriorate aquatic habitats, marshlands, and wetlands. Regulation 6.04.15(p) requires that the proposed project will not significantly degrade existing natural scenic characteristics, create blight, or cause other nuisances such as excessive noise and obnoxious odors.

The Board, within its authority to enact "more stringent" regulations, could determine that the environmental capacity to accommodate development, as set forth in § 24–65.1–204(1)(b), C.R.S. (1988 Repl.Vol. 10B) should include consideration of the potential impact on naturally occurring aquatic habitats, marshlands, wetlands, and scenic characteristics within that area and also consideration of the effect of noise and odors associated with the project.

■ Similarly, Eagle County Land Use Regulation 6.05.15(g) requires, *inter alia,* that the proposed project must not, by the diversion of water, significantly deteriorate aquatic habitats, marshlands, and wetlands. Again, within its authority to enact "more stringent" regulations, the Board could determine that a water diversion project that significantly alters aquatic habitats, marshlands, and wetlands from their natural state without adequate mitigation is not one which emphasizes the efficient use of water as prescribed by § 24–65.1–204(8).

### B.

■ The cities' apparently also are challenging the authority of the Board to apply the statutory criteria set forth in § 24–65.1–

204 if the end users of the water are located elsewhere. Again, we do not agree.

If the statutory authority to regulate the development of water projects extends only to the area in which the water is to be used, the Land Use Act could never enable a county to regulate construction of water diversion projects located within the county but which transport water to end users outside the county. In our view, this was not the result intended by the General Assembly.

The supreme court has determined that the construction and operation of municipal water projects outside municipal boundaries is a matter of concern to the municipality but is also a matter of concern to the area in which the municipality proposes to build and operate the project. *See City & County of Denver v. Board of County Commissioners, supra.* Certainly, it is questionable to characterize such a project as one of solely municipal concern. *See City & County of Denver v. Bergland,* 517 F.Supp. 155 (D.Colo. 1981), *modified on other grounds,* 695 F.2d 465 (10th Cir.1983).

This is especially true in circumstances such as here in which the water project is to be located on public land accessible to anyone who cares to journey to Eagle County to visit the area. The environmental impact of the cities' proposed project upon this public land, designated a wilderness area by the federal government, will have consequences for all Colorado citizens.

Interpreting the statute to mean that the Board cannot apply its regulatory criteria here because the Board cannot presume to control growth, development, and use of existing facilities in the cities would eviscerate a fundamental objective of the Land Use Act.

To the contrary, as the supreme court concluded, although a municipality may possess the right to construct water projects outside its borders, it must nonetheless submit to the permit process as provided by the Land Use Act. *See City & County of Denver v. Board of County Commissioners, supra.* Thus, the regulations enacted by the Board are applicable to development of water diversion projects which are located within Eagle County even if the end users of the water are not.

## C.

■ The cities' also appear to contend that because, in its order, the Board stated that certain Eagle County Land Use regulation criteria—which mirror statutory criteria contained in § 24–65.1–204(1)(b) and § 24–65.1–204(8), C.R.S. (1988 Repl.Vol. 10B)—did not apply to the cities' permit applications, the Board lacked the authority to apply any other regulations.

During preliminary proceedings before the Board, the cities argued *in limine* that the need for the water project within the cities and the impact of the project upon the cities were issues which should not be considered in the permitting process because these matters were beyond the control of Eagle County. The Board agreed, and in its order denying the permits, the Board specified that Eagle County Land Use Regulations 6.04.15(1)(e), (f), (g), (h), (i), (j), and (s) and 6.05.15(a) and (e) did not apply. All of these regulations relate to the need and impact of the water projects within the cities. Regulation 6.04.15(1)(a), which contains language almost precisely mirroring § 24–65.1–204(1)(b) and 6.05.15(1)(c), which mirrors the language of 24–65.1–204(8), were also specified as inapplicable to the cities' applications, presumably for the same reasons.

By agreeing that 6.04.15(1)(a) and 6.05.15(1)(c) did not apply to their permit applications, the cities contend, the Board lacked any authority to deny them. According to the cities, the only legitimate criteria for permit approval are those criteria which emphasize "statewide concerns," and which are enumerated in §§ 24–65.1–204(1)(b) and 24–65.1–204(8). We disagree.

As discussed, §§ 24–65.1–204(1)(b) and 24–65.1–204(8) are relevant not only to the geographical area in which the water is to be used, but also to the geographical area where the water project is to be located. *See City & County of Denver v. Board of County Commissioners, supra.* The entire purpose of the permitting process here was to determine if the expected impact of the proposed

project on the area in which it was to be built would meet the statutory and regulatory criteria.

Without determining whether the Board was correct in completely excluding any consideration of the need for or impacts of the proposed projects in and upon the cities, based upon the dual applicability of § 24–65.1–204(1)(b) and 24–65.1–204(8), we interpret the Board's findings as excluding regulations 6.04.15(1)(a) and 6.05.15(1)(c) from consideration only to the extent that they relate to impacts of the project outside the county boundaries.

### III.

Next, the cities assert several facial constitutional challenges to the regulations. We reject each, in turn.

### A.

The cities assert that the Eagle County regulations are unconstitutionally vague. We do not agree.

■ When determining whether a regulation is impermissibly vague, the words and phrases employed must be considered by the interpreting court in light of their generally accepted meaning. *Colorado State Board of Medical Examiners v. Hoffner*, 832 P.2d 1062 (Colo.App.1992). Moreover, "courts will attempt to construe [the legislation challenged on vagueness grounds] in a manner which will satisfy constitutional due process requirements, if reasonable and practical construction of the [legislation] will achieve such result." *See People v. Rostad*, 669 P.2d 126, 127 (Colo.1983).

■ "The due process clause, in part, requires that a regulation not be so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application." *Watson v. Board of Regents*, 182 Colo. 307, 313, 512 P.2d 1162, 1165 (1973). The regulation, however, need not be drafted with mathematical precision because the terms used must be general enough to deal with the problem addressed by the regulation under diverse circumstances. *Regen-*

cy *Services Corp. v. Board of County Commissioners*, 819 P.2d 1049 (Colo.1991).

According to the cities, persons of ordinary intelligence must guess at the meaning of Eagle County Land Use Code §§ 6.03.15.1 and 6.03.15.1.p which provide that a project may not "significantly deteriorate" aquatic habitats and wetlands and may not "significantly degrade" existing natural scenic characteristics. We disagree.

"Degrade" means "to lower in grade or desirability." *See* Webster's Third New International Dictionary 594. "Deteriorate" means "to make inferior in quality or value." *See Webster's Third New International Dictionary* 616. "Significant" means "deserving to be considered; important; notable," and "significantly," thus means "to a significant degree." *See Webster's Third New International Dictionary* 2116. The antonyms of "significant" include meaningless, trivial, trifling, paltry, and picayune. *See Roget's Thesaurus* 639 (Bantam Rev.Ed.1990).

"Significant" is a term used extensively throughout statutory language in Colorado to describe the extent of a specific status or condition. *See* § 13–21–401(1), C.R.S. (1987 Repl.Vol. 6A) ("[Manufacturer] also includes any seller of a product who is owned in whole or significant part by the manufacturer or who owns, in whole or significant part, the manufacturer."); § 16–4–101(1)(b), C.R.S. (1994 Cum.Supp.) (no bail required in cases of certain crimes of violence if the court finds the proof is evident that the crime occurred and that "the public would be placed in significant peril if the accused were released"); § 22–20–103(1.5), C.R.S. (1994 Cum.Supp.) (children with disabilities includes children with "significant limited intellectual capacity" or "significant identifiable emotional disorder[s]"). Indeed, our research has revealed over 200 statutory sections which have used the term without any reported interpretative difficulty.

■ "Significantly deteriorate" as applied to aquatic habitats and wetlands plainly means to make inferior in quality or value to a significant, as opposed to trivial, degree. "Significantly degrade" as applied to natural scenic characteristics plainly means to lower

in grade or desirability to a significant, as opposed to trifling, degree.

The terms encompass the degradation or deterioration of the naturally occurring habitat or scenic characteristics to such a degree as to be worthy of consideration. Thus, we conclude that the regulations are not unconstitutionally vague.

### B.

■ The cities also challenge the requirement in Eagle County Land Use Code § 6.04.15.1.1 that the benefits of the project outweigh the losses of any natural resources. According to the cities, neither they, nor the Board, could reasonably perform such a balancing.

However, the concept of balancing or of weighing benefits against risk of loss is common in our jurisprudence. *See Moody v. Corsentino,* 843 P.2d 1355 (Colo.1993) (assessing whether a defendant's speedy trial right have been infringed requires the court to apply a four-part balancing test); *People v. Rister,* 803 P.2d 483 (Colo.1990) (assessing the constitutionality of highway sobriety checkpoints requires the court to balance the state's interest in preventing drunken driving against the privacy interests of the drivers who are briefly stopped); *Belle Bonfils Memorial Blood Center v. District Court,* 763 P.2d 1003 (Colo.1988) (when determining to what extent materials sought by pretrial discovery may be protected the trial court must balance the competing interests that would be served by granting or denying disclosure); *Camacho v. Honda Motor Co.,* 741 P.2d 1240 (Colo.1987) (in product liability cases certain factors are of value in balancing the attendant risks and benefits of a product to determine if it is unreasonably dangerous); *Barrett v. University of Colorado Health Sciences Center,* 851 P.2d 258 (Colo.App.1993) (determining whether a public employee's speech is constitutionally protected requires balancing the interests of the employee in commenting on matters of public concern against the interests of the state in the efficient provision of public services).

The Board, acting in its quasi-judicial capacity, is capable of performing a balancing test which weighs the potential adverse environmental impact of the project against its potential benefits. Contrary to the cities' contention, the regulations do not lend themselves to arbitrary and discriminatory enforcement simply because they require balancing benefits against the risk of loss of natural resources. *See City of Lakewood v. Colfax Unlimited Ass'n,* 634 P.2d 52 (Colo. 1981).

### C.

The cities also contend that the Eagle County Land Use regulations relied upon to deny the permits are unduly oppressive because they require the preservation of "purely subjective scenic characteristics" at the expense of the cities' constitutional and statutory entitlement to water. According to the cities, if they must comply with the Board's criteria for wetlands protection and nuisance factor limitations, they will be unable to exercise their validly held water rights. We disagree.

■ Section 24–65.1–106(1)(b), C.R.S. (1988 Repl. Vol. 10B) provides that nothing in the Land Use Act shall be construed as "[m]odifying or amending existing laws or court decrees with respect to the determination and administration of water rights." This provision does not give the holder of any pre-existing water rights a blanket exemption from regulation by local governments, but may afford a basis for invalidating particular regulations. *City & County of Denver v. Board of County Commissioners, supra.*

Every local government exercise of land use regulation is likely to affect the legitimate property interests of would be developers in some manner. *See Tri–State Generation & Transmission Ass'n v. Board of County Commissioners,* 42 Colo.App. 479, 600 P.2d 103 (1979). The existence of previously decreed water rights does not provide an exemption for the developer from regulation under the Land Use Act; so long as the regulations do not serve to undermine these established water rights, they are a valid exercise of authority. *City & County of Denver v. Board of County Commissioners, supra.*

As discussed, the trial court correctly concluded that the regulations pertaining to wetlands protection and nuisance factors were a proper exercise of authority to enact more stringent guidelines than those embodied by the Land Use Act. *See* § 24–65.1–402(3).

■ At the insistence of the cities, the Board limited its consideration to the water project as proposed, and did not consider whether any alternative configurations could be designed which would meet the regulatory criteria. Although the permits for the project were denied, the cities are not prohibited from resubmitting the proposed project with changes or from submitting a different proposal. The cities have not demonstrated that such alternatives are unfeasible.

The cities' entitlement to take the water from the Eagle River basin, while a valid property right, should not be understood to carry with it absolute rights to build and operate any particular water diversion project. *See City & County of Denver v. Bergland, supra.* We do not perceive any undue interference with the exercise of the cities' established water rights.

### IV.

■ The cities also argue that, even if the Board has the power to regulate the proposed project under the Land Use Act, its regulations concerning wetlands protection and nuisance abatement bear no reasonable relationship to valid county concerns. We disagree.

To the contrary, the General Assembly has explicitly endorsed environmental concerns as a legitimate concern in land use planning by local governments. As used in the Local Government Land Use Control Act, "local government" includes counties. *See* § 29–20–103, C.R.S. (1986 Repl.Vol. 12A).

Section 29–20–102, C.R.S. (1986 Repl.Vol. 12A) declares that: "[I]n order to provide for planned and orderly development within Colorado and a balancing of basic human needs of a changing population with legitimate environmental concerns, the policy of this state is to clarify and provide broad authority to local governments to plan for and regulate the use of land within their respective jurisdictions."

Section 29–20–104(1)(h), C.R.S. (1986 Repl. Vol. 12A) further provides that each local government has the authority to plan for and regulate land use within its jurisdiction "so as to provide planned and orderly use of land and protection of the environment in a manner consistent with constitutional rights."

We therefore reject the cities' contention that the Eagle County regulations are unrelated to any valid county concern.

### V.

The cities next argue that, even if the Board may impose reasonable regulations upon the water diversion project and reasonable conditions upon project design and construction, it lacks statutory authority to deny the permits here. We disagree.

### A.

■ Contrary to the cities' contention, the denial of the permit applications was not an illegal abrogation of the cities' home rule powers.

As determined by the supreme court, the Land Use Act gives the Board the power to regulate, but not to prohibit, the operation of extraterritorial water projects. *City & County of Denver v. Board of County Commissioners, supra.* The Land Use Act itself specifically provides that, pursuant to regulations adopted by the county, a permit may be granted or denied after hearing on the matter. *See* § 24–65.1–501.

Here, the cities' contentions notwithstanding, no outright abrogation of the cities' home rule powers to construct, condemn, purchase, acquire, lease, add to, maintain, conduct, and operate extraterritorial water works under Colo. Const. art. XX, § 1, occurred. Therefore, *City of Thornton v. Farmers Reservoir & Irrigation Co.,* 194 Colo. 526, 575 P.2d 382 (1978), relied upon by the cities, is inapplicable.

As determined by *City & County of Denver v. Board of County Commissioners, supra,* construction of water diversion projects is a matter of mixed local and state concern and home rule cities must submit to the permit process. The cities have not been

prohibited from submitting a substitute proposal. The denial of their permit applications affects this particular project only and not their right to construct and maintain extraterritorial water works.

## B.

The cities next argue that the ability of the Board to deny their permit applications was circumscribed by § 24–65.1–105(1), C.R.S. (1988 Repl.Vol. 10B). Again, we reject their analysis.

Section 24–65.1–105(1), provides that, with regard to public utilities: "[N]othing in this article shall be construed as enhancing or diminishing the power and authority of municipalities, counties, or the public utilities commission" and "[t]he public utilities commission and public utilities shall take into consideration and, when feasible, foster compliance with adopted land use master plans of local governments . . . ."

According to the cities, all that was required of them pursuant to § 24–65.1–105(1), was to "take into consideration" and "foster compliance" with Eagle County's concerns. They contend that this requirement was served by the public hearing process during which Eagle County was "able to assess the project proposal and place its concerns on the record." The cities claim that despite this voluntary "accommodation" of Eagle County's concerns, the Board attempted to "veto" the project by denying the permits. We reject the cities' contention on several grounds.

First, the cities' contention that § 24–65.1–105(1) exempts a municipally operated utility from the permit process under the Land Use Act was rejected in *City & County of Denver v. Board of County Commissioners, supra.* Although the supreme court stated in that case that § 24–65.1–105(1) "may provide the courts with a basis for invalidating particular local regulations," it nevertheless found that the subsection does not "exempt [municipal] water projects from every conceivable regulatory scheme." *City & County of Denver v. Board of County Commissioners, supra,* 782 P.2d at 764. The cities' argument here is no different from the general attack upon the validity of the permit process rejected in that case, and we view that ruling as controlling.

In a closely related argument, the cities characterize "cooperation with the permit process" as equivalent to "consideration of and fostering compliance with" the adopted land use master plans of Eagle County. In other words, because they voluntarily followed the permit process and submitted a proposal, the cities suppose that they have demonstrated a willingness to cooperate with Eagle County's land use plans. Even if that were all that was required of them, the record does not support this contention.

The regulations utilized by the Board in evaluating the cities' applications are specific regulations adopted to control the construction and operation of domestic water supply projects and municipal water projects. Although they may be related to the Eagle County land use master plan, they are enacted for a more specific purpose. Consideration of, and fostering compliance with, the Eagle County land use master plan perhaps fulfills a particular requirement of § 24–65.1–105(1), but such does not begin to fulfill the extensive permitting process envisioned by the remainder of the Land Use Act.

Moreover, the record reveals no indication that the cities were willing to alter any aspect of the project. To the contrary, the cities have argued that they may disregard Eagle County concerns because Eagle County lacks any regulatory authority over the project.

Further, insofar as the cities contend that a municipally owned utility is only required to consider and, when feasible, foster compliance with local government land use master plans, such an interpretation would render the rest of the Land Use Act irrelevant to public utilities. The supreme court rejected this result in *City & County of Denver v. Board of County Commissioners, supra.*

## C.

The cities next contend that the Board's power to deny the permits is circumscribed by § 30–28–110, C.R.S. (1986 Repl.Vol. 12A). The cities maintain that this provision supersedes the permitting process prescribed by

the Land Use Act and thus precludes denial of their permits. Again, we do not agree.

### 1.

Section 30–28–110(1)(c), C.R.S. (1986 Repl.Vol. 12A) provides, *inter alia*, that although counties may regulate the construction by utilities, if the particular project "is one the authorization or financing of which does not, under the law governing the same, fall within the province of the board of county commissioners or other county officials or board, the submission to the [county planning commission] shall be by the body having such jurisdiction, and commission's disapproval may be overruled by said body by a vote of not less than a majority of its entire membership or by said official."

Again, the cities' contention that § 30–28–110 exempts municipal utilities from local government regulation of extraterritorial water projects was raised and rejected in *City & County of Denver v. Board of County Commissioners, supra.* The court found that § 30–28–110 was not facially inconsistent with the Land Use Act and that any arguable power of a municipality to "overrule planning commission disapproval of a project does not give [the municipality] the unrestricted authority to ignore regulations adopted pursuant to the Land Use Act." *City & County of Denver v. Board of County Commissioners, supra,* 782 P.2d at 766. Therefore, that case is controlling here.

### 2.

The cities argue, however, because § 30–28–110 was adopted later in time than the Land Use Act, § 30–28–110 controls. They contend that, in order to read the statutes harmoniously and avoid inconsistency, we must assume that the General Assembly knew that the later statute would deprive local governments of the power to deny a permit to a municipal utility and thus intended to relegate local governments to a purely advisory role. We do not agree.

Section 24–65.1–501(4) provides specific authority for a local government to approve or deny a permit to conduct activities of state interest. The cities argue that, in order to harmonize the two statutory sections, we must read the provision of § 30–28–110(1)(c), allowing municipal utility override of a county planning commission disapproval of a project, as a modification of § 24–65.1–501(4).

Although the cities maintain that this does not amount to a *revocation* of § 24–65.1–501(4), we are at a loss to ascertain what else it could be. If § 30–28–110(1)(c) prevails, then § 24–65.1–501(4) is nullified.

Statutes upon the same subject must be construed together and any conflicts reconciled if possible to give effect to the legislative purposes behind each section; particular statutes will prevail over general, and later provisions over former. *State v. Borquez,* 751 P.2d 639, 643 (Colo.1988). If the statutory sections are irreconcilable, "the statute prevails which is latest in its effective date." Section 2–4–206, C.R.S. (1980 Repl. Vol. 1B).

Nonetheless, before a later statute of general terms is deemed to revoke an existing provision of a statute which is specific in its terms, there must be a clear and unmistakable intent to do so. *See Smith v. Zufelt,* 880 P.2d 1178, 1184 n. 9 (Colo.1994) ("[T]he 'last-in-time' approach is inapposite where one statute more specifically addresses the situation at issue."); *People in Interest of E.Z.L.,* 815 P.2d 987 (Colo.App.1991); § 2–4–205, C.R.S. (1980 Repl.Vol. 1B).

To the extent there is conflict, the Land Use Act specifically addresses the situation at issue—water projects designated as activities of state interest by the appropriate unit of local government. Therefore, we conclude that the General Assembly intended the permitting process of § 24–65.1–501 to apply to utility projects which involve designated activities of state interest and § 30–28–110(1)(c) to apply to any other utility project. Thus, § 24–65.1–501(4) prevails as it is a specific exception to § 30–28–110(1)(c), a statute of broader scope. *See Husson v. Meeker,* 812 P.2d 731 (Colo.App.1991).

### V.

Finally, the cities argue that the trial court erred in determining that they lacked standing to pursue Fourteenth Amendment based

substantive due process and regulatory taking claims against the Board. We disagree.

### A.

 A municipality lacks standing to assert a substantive due process claim because it is but a creature of the state and cannot invoke the provision of the Fourteenth Amendment in opposition to the will of the state and because the Fourteenth Amendment does not impose restrictions upon the relationships between one political subdivision of a state and another. *See Town of Orchard City v. Board of Delta County Commissioners*, 751 P.2d 1003 (Colo.1988); *see also Coleman v. Miller*, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939); *South Macomb Disposal Authority v. Township of Washington*, 790 F.2d 500 (6th Cir.1986).

In contrast, municipal corporations are not barred from asserting procedural due process claims. *See City & County of Denver v. Eggert*, 647 P.2d 216 (Colo.1982). Procedural due process, however, was not the basis for the cities' sixth and twelfth claims.

### B.

 Similarly, because the cities failed to establish standing to assert these claims, they also were not entitled to invoke the Civil Rights Act, 42 U.S.C. § 1983 (1988). That legislation does not create any substantive federal rights but merely provides a remedy for violations of other federal statutory or constitutional rights. *See Tafoya v. Adams*, 816 F.2d 555 (10th Cir.1987); *South Macomb Disposal Authority v. Township of Washington, supra.* Furthermore, governmental entities are not protected "persons" under § 1983. *Commonwealth of Pennsylvania v. Porter*, 659 F.2d 306 (1981).

### C.

 Neither does the cities' home rule status, derived from Colo. Const. art. XX, confer standing upon them to invoke the Fourteenth Amendment. Municipalities and counties exist for the convenient administration of government and are instruments to carry out the will of the state; whether statutory or created under the constitution, municipalities have no privileges or immunities under the state constitution. *Enger v. Walker Field*, 181 Colo. 253, 508 P.2d 1245 (1973); *Board of County Commissioners v. E–470 Public Highway Authority*, 881 P.2d 412 (Colo.App.1994) (*cert. granted* October 11, 1994).

The state thus retains a measure of control over its home-rule municipalities. *See Voss v. Lundvall Brothers, Inc.*, 830 P.2d 1061 (Colo.1992) (in matters of mixed local and statewide concern, a home-rule municipal ordinance may not coexist with a conflicting state statute, the ordinance is superseded); *Vick v. People*, 166 Colo. 565, 445 P.2d 220 (1968) (a home rule city has authority which allows its ordinances to coexist with state ordinances concerning the same matters only insofar as they are not in conflict); *cf. Village of Arlington Heights v. Regional Transportation Authority*, 653 F.2d 1149 (7th Cir. 1981) (although Illinois home rule provisions changed the relationship of the state to the home rule municipalities in some respects, the state retained a general power of control over its political subdivisions and the Fourteenth Amendment restraints against state action do not apply against the state in favor of its home rule municipalities).

### D.

 That the cities are operating their water systems in a proprietary rather than governmental capacity also does not provide them with standing to invoke the Fourteenth Amendment.

The governmental/proprietary function distinction is subject to criticism and has been limited in its application. *See Colowyo Coal Co. v. City of Colorado Springs*, 879 P.2d 438 (Colo.App.1994); *see also City & County of Denver v. Mountain States Telephone & Telegraph Co.*, 754 P.2d 1172 (Colo.1988). Even if the distinction is viable, however, it has not been considered a sufficient basis for allowing municipalities to invoke the Fourteenth Amendment. *See City of Trenton v. State of New Jersey*, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923) (because governmental and proprietary distinction is a court developed doctrine based on vague distinc-

tions used primarily as a method of escaping difficulties in the application of tort liability, the Court rejected argument that it provided an analytical framework upon which a municipality could invoke federal constitutional provisions against the state).

### E.

Finally, we reject the cities' contention that *Town of Orchard City v. Delta County Commissioners, supra,* has been eroded by *City of Montrose v. Public Utilities Commission,* 629 P.2d 619 (Colo.1981) (court rejected a municipality's Fourteenth Amendment argument on the merits without addressing standing issue). Therefore, we conclude that the trial court did not err by dismissing the cities' sixth and twelfth claims and by denying leave to amend the complaint to add a fifteenth claim.

### VI.

In sum, the record of the proceedings before the Board contains competent evidence to support its determination that all of the applicable criteria had not been satisfied. We further conclude that the Eagle County regulations are within the authority granted in connection with the administration of activities of state interest and are not violative of any constitutional provisions. Thus, the decision of the Board must be reinstated. *See Ross v. Fire & Police Pension Ass'n, supra.*

Accordingly, the judgment of the trial court vacating the Board's order is reversed, and the cause is remanded to the trial court with instructions to reinstate the decision of the Board. The judgment dismissing the cities' sixth and twelfth claims and denying leave to amend the complaint to add a fifteenth claim is affirmed.

JONES and ROTHENBERG, JJ., concur.